172 P.3d 860

**Linda BENTLEY and G. Russel Childress, Plaintiffs/Appellees,**

v.

**BUILDING OUR FUTURE, a Political Action Committee, Yes on Props 1, 2,3,4,5,6,7, Defendant/Appellant.**

**No. 1 CA–CV 07–0165.**

Court of Appeals of Arizona, Division 1, Department C.

Dec. 20, 2007.

Review Denied April 22, 2008.

Carol Lynn de Szendeffy By Carol Lynn de Szendeffy, Carefree, Attorney for Plaintiffs/Appellees.

Coppersmith Gordon Schermer & Brockelman PLC By Andrew S. Gordon, Lauren J. Weinzweig, Phoenix, Attorneys for Defendant/Appellant.

## OPINION

KESSLER, Judge.

¶ 1 Building Our Future ("BOF") appeals the superior court's holding that BOF violated Arizona Revised Statutes ("A.R.S.") section 16–912.01 (2006) ("the Act"), and the court's granting of summary judgment and awarding of 1.3 million dollars in favor of Linda Bentley and G. Russel Childress ("Bentley/Childress").[1] We hold that BOF's advertisements supporting seven bond propositions were not "more than fifty percent devoted to . . . the same subject," as required for the disclosure provisions of the Act to apply. A.R.S. § 16–912.01(H). Accordingly, we vacate the judgment and direct the trial

---

**1.** Bentley/Childress are private citizens with standing to bring suit against BOF pursuant to

A.R.S. § 16–912.01(I) (creating private right of action).

court on remand to enter summary judgment for BOF.

## FACTUAL AND PROCEDURAL HISTORY

¶2 In February 2006, Bentley/Childress filed an action against BOF alleging that BOF's advertisements for seven ballot propositions in a special bond election [2] did not comply with the requirements of A.R.S. § 16–912.01(A).[3] Bentley/Childress alleged BOF was liable because, among other things, it failed to accurately identify its four major funding sources on its advertisements in support of the seven propositions and failed to print the disclosures in a size at least as large as the majority of the printed text in violation of A.R.S. § 16–912.01(E).[4] In its answer, BOF contended in part that the disclosure provision of A.R.S. § 16–912.01(E) was inapplicable to its advertisements because A.R.S. § 16–912.01(H) provides that the disclosure requirements only apply to "advertisements the contents of which are more than fifty per cent devoted to one or more ballot propositions or proposed measures on the same subject." (Emphasis added). BOF's advertisements read, "Vote Yes. 7 Phoenix Bonds With No New Taxes." BOF contended that the seven bond issues did not deal with the "same subject".

¶3 The parties filed motions for summary judgment. Bentley/Childress argued "[a]ll seven of the City of Phoenix bond propositions contain the common thread of building, renovating and/or expanding government facilities" and that "[m]any of the bonds are so interdependent that if one portion of one bond did not pass it would leave other bonds incomplete." Thus, they argued,

> [f]or example: Proposition 4 includes demolition/improvement of a Salvation Army Center, restoration of the Historic Ellis–

Shackleford House, and other buildings, partial funding for a YMCA gym, and land acquisitions for a variety of other projects and open space while Proposition 5 includes building and expanding libraries and cultural facilities, buildings for nonprofit organizations, Traffic Counting/Parking Meter/Right–of–Way Management Offices along with Phoenix City Hall Renovations. Proposition 1 includes a Family Advocacy Center, which will be occupied primarily by nonprofit organizations. Proposition 6 includes revitalization and historic preservation projects, plus land acquisition for various downtown projects, while Proposition 7 includes downtown streetscape, trails and connectivity improvements and downtown gateways and oases, which are directly connected to Proposition 3, which includes the ASU downtown campus U of A College of Pharmacy and other projects, and Proposition 6, which includes subsidized housing development and downtown land purchases, whereas portions of the same project are found in multiple bonds. So if one bond failed then portions of another bond that passed would either be meaningless or simply provide for an incomplete project. [ ] Another example is Proposition 1, which is primarily for improving and expanding the city's police, fire protection and homeland security systems, while Proposition 2 includes Traffic Preemption for fire trucks and expansion of the Police Communications Center, which, without increasing the number of precincts proposed in Proposition 1, would not be necessary.

¶4 Bentley/Childress also asserted that "[t]he interdependence and overlapping of all seven bonds is born (sic) out in how Phoenix presented [the propositions as a package]." Bentley/Childress described the bonds and how they were promoted as a "single global

---

**2.** In March 2006, the City of Phoenix held a special bond election which included only the seven ballot propositions BOF was formed to support.

**3.** A.R.S. § 16–912.01(A) states, "[a] political committee that makes an expenditure in connection with any literature or advertisement to support or oppose a ballot proposition shall disclose in such literature or advertisement the four larg-

est of its major funding sources as of the time the literature or advertisement is printed, recorded or otherwise produced for dissemination."

**4.** A.R.S. § 16–912.01(E) states in relevant part, "[a]ny disclosure statement required by this section shall be printed clearly and legibly in a conspicuous manner in type at least as large as the majority of the printed text."

funding program to support the city in its entirety."

¶ 5 BOF argued that the seven propositions were not on the "same subject" because they contemplated a variety of purposes. BOF also argued that the determination that the propositions were not on the "same subject" was in part supported by the existence of other groups and individuals with varying degrees of support and opposition for specific propositions.[5]

¶ 6 In their motions for summary judgment, the parties did not cite legal authority to support or discredit their obviously differing interpretations of the Act's reference to "same subject," nor did they explicitly advance any interpretation of the meaning of "same subject" supported by legal authority or evidence of legislative intent.[6]

¶ 7 According to the Informational Pamphlet sent to voters before the election, the "proposed bond program" was to "authorize the issuance of general obligation bonds in an amount not to exceed 878.5 million. The ballot will consist of seven propositions that are intended to provide bond funding for the City's property tax-supported capital improvement program over the next five fiscal years". The seven bond ballot propositions were described in the Informational Pamphlet as follows:

Proposition 1) Strengthening Police, Fire and Homeland Security (177 million, 20% of total); 2) Using Technology to Improve Police, Fire Protection, Government Efficiency, Customer Service and Access to Voting (16.1 million, 2% of total); 3) Building Small High Schools, Higher Education and Health Science Facilities (198.7 million, 22% of total); 4) Increasing Recreational Opportunities with New Parks and Open Spaces (120.5 million, 14% of total); 5) Serving Our Community with Libraries and Youth, Senior and Cultural Centers (133.8 million, 15% of total); 6) Providing

Housing that is Affordable to Families and Seniors and Revitalizing Neighborhoods (85 million, 10% of total); 7) Constructing Streets and Storm Sewers for Better Infrastructure (147.4 million, 17% of total).

¶ 8 Noting that "[t]he parties do not disagree as to the material facts at issue, rather they disagree as to the legal effect of those facts, and the application of Arizona's political campaign disclosure law",[7] the superior court granted summary judgment for Bentley/Childress. As to the "same subject" issue, the court found that,

[a]lthough all bond issues relate to government spending of one sort or another, if the "same subject" is construed to mean propositions which are closely related and which further the same purposes, this construction would include overlapping and interdependent ballot propositions presented together as a package, precisely such as the propositions at issue. This construction also furthers the public policy of protecting the integrity of the political process by requiring disclosure of financial contributors. The Court adopts this construction and determines that Defendant is not exempt from the disclosure requirements based on the "same subject" exception.

The court also awarded Bentley/Childress 1.3 million in mandatory statutory penalties for BOF's violation of the Act. A.R.S § 16–912.01(I).

¶ 9 BOF timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. § 12–2101(B) (2003).

## DISCUSSION

¶ 10 BOF raises five issues on appeal. Since we agree with BOF that the seven bond propositions did not deal with the same subject and thus the disclosure provisions of

---

**5.** The other groups included: Stop Taxing Our Property, No on Prop. 1,2,3,4,5,6,7; Friends of Five; and Friends of ASU/Phoenix (a.k.a. Friends of Proposition 3).

**6.** The parties did raise other issues on summary judgment, including whether the Act's disclosure provisions were constitutional. For the reasons

stated below, we do not address these other issues on appeal.

**7.** The record supports that: 1) BOF's advertising supported the seven bond propositions, 2) the propositions were each voted on separately and 3) certain propositions were supported and opposed by other interests groups as well.

the Act did not apply to BOF''s advertisements, we do not address the other issues.[8]

### Standard of Review

■■■ ¶ 11 We review issues of law involving statutory interpretation and a trial court's grant of summary judgment de novo. *Twin Peaks Constr. Inc. v. Weatherguard Metal Constr., Inc.*, 214 Ariz. 476, 477–78, ¶¶ 5–6, 154 P.3d 378, 379–80 (App.2007); *Great Am. Mortgage, Inc. v. Statewide Ins. Co.*, 189 Ariz. 123, 124–25, 938 P.2d 1124, 1125–26 (App.1997). If possible we construe statutes "to avoid rendering them unconstitutional," and "to avoid unnecessary resolution of constitutional issues." *Hayes v. Continental Ins. Co.*, 178 Ariz. 264, 272–73, 872 P.2d 668, 676–77 (1994). "When cross-motions for summary judgment have been filed, this court may evaluate the cross-motions and, if appropriate, remand with instructions that judgment be entered in favor of the appellants." *Burke v. Voicestream Wireless Corp. II*, 207 Ariz. 393, 400, ¶ 37, 87 P.3d 81, 88 (App.2004).

¶ 12 In construing a statute, the starting point is the language of the statute itself "because we expect it to be 'the best and most reliable index of a statute's meaning.' " *Zamora v. Reinstein*, 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996) (citations omitted); *Janson v. Christensen*, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991); *Barry v. Alberty*, 173 Ariz. 387, 390, 843 P.2d 1279, 1282 (App. 1992). *See also Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.*, 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994) ("Where the [statutory] language is plain and unambiguous, courts must generally follow the text as written."). The *Canon* court reiterated,

> [i]t is only where there is no doubt as to the intention of those who frame [a] ... statute that a court may modify, alter or supply words that will "obviate any repugnancy to or inconsistency with such intention," and by so doing permit "particular provisions" to be read or construed other-

wise than "according to their literal meaning."

*Id.* (citations omitted).

■■■ ¶ 13 If the statutory language is unambiguous, "we apply it without resorting to other methods of statutory interpretation." *Hayes*, 178 Ariz. at 268, 872 P.2d at 672. Ambiguity exists if there is uncertainty about the meaning or interpretation of a statute's terms, i.e., whether there is more than one rational or reasonable interpretation of the statute. *Id.* If the statutory language is ambiguous, we may remove doubt about the statute by resorting to statutory interpretation to determine the legislature's intent. *Id.* "In pursuing this goal, we consider the statute's context; its language, subject matter, and historical background; its effects and consequences; and its spirit and purpose." *Id.* Finally, we attribute a plain and ordinary meaning to the statutory language to the extent that it does not frustrate the overall legislative intent and purpose of the statute. *Twin Peaks*, 214 Ariz. at 478, ¶ 7, 154 P.3d at 380 (words in statute are given their ordinary meaning "unless the context in which they are used suggests another meaning.").

### The Statutory Language

■ ¶ 14 The requirement that a political committee disclose its four major funding sources in its literature under A.R.S. § 16–912.01(A) is applicable when the committee "makes an expenditure in connection with any literature or advertisement to support or oppose a ballot proposition". However, A.R.S. § 16–912.01(H) limits the applicability of Subsection A, and consequently the statute in its entirety, by stating, "[t]his section only applies to advertisements the contents of which are more than fifty per cent devoted to one or more ballot propositions or proposed measures on the same subject."

¶ 15 BOF argues on appeal that the superior court erred by ignoring the plain meaning of the statute's "same subject" language and by interpreting "same subject" to mean "closely related and [ ] further the same pur-

---

8. Those other issues are: (1) the Act's disclosure provisions are unconstitutional; (2) the Act's reference to "the majority of the printed text" includes the text of the disclaimer; (3) BOF's ad-

vertisements complied with the Act; and (4) there were questions of fact as to the amount of the statutorily-required penalty which precluded summary judgment.

pose ... includ[ing] overlapping and interdependent ballot propositions presented together as a package".[9] BOF contends that the term "same" means "identical; alike in every respect" or "alike in degree, kind, character, or quality" citing *Webster's Deluxe Unabridged Dictionary* 1602 (2d ed.1979), *The American Heritage Dictionary* 1088 (2d College Ed.1982) and *Dictionary.com Unabridged.*

¶ 16 In contrast, Bentley/Childress argue that the seven bond issues all dealt with improvements for the City of Phoenix and some overlapped in the use of the bond funds. They also argue that the City of Phoenix supported all seven bond propositions as a package. Accordingly, Bentley/Childress contend that the seven propositions all dealt with the "same subject" because the term "same" does not necessarily mean "identical," but can frequently mean "a kind or species, not the specific thing" and can mean "similar," citing *Black's Law Dictionary,* 4th Ed. (West Publishing 1968) and *The Merriam Webster Dictionary,* First Pocket Edition, (G & C Merriam Co.1974).

¶ 17 We agree with BOF that the several bond propositions its advertisements supported were not on the "same subject." We do so for two reasons, both related to principles of statutory construction.

¶ 18 First, in construing statutes, "[w]ords and phrases shall be construed according to the common and approved use of the language. Technical words and phrases and those which have acquired a peculiar and appropriate meaning in the law shall be construed according to such peculiar and appropriate meaning." A.R.S. § 1–213 (2002). Our review of the readily available sources reflects that the term "same" means "identical" and not, as Bentley/Childress contend, a "kind or species" or "similar," nor, as the trial court held, "closely related," "furthering the same purpose," "overlapping and interdependent". *See, e.g., II Compact Edition of the Oxford English Dictionary* 74 (1971) (de-

fining "same," when used as an adjective to mean "[n]ot numerically different from an object indicated or implied; identical"); *The Random House Dictionary of the English Language Unabridged Edition* 1264 (1966) (defining same to mean "identical with what is about to be or has just been mentioned ... being one or identical though having different names, aspects, etc." and stating that the term "similar" is merely a synonym for the word "same"); *Webster's II: New Riverside University Dictionary* 1034 (1994) (defining "same" to mean "[b]eing the very one: identical ... alike in kind, quality, quantity or degree ... [c]onforming in every detail").

■ ¶ 19 Thus, applying the principles that we use common and approved uses of a word or phrase, A.R.S. § 1–213, we hold that in this context "same" means "identical". Adoption of the trial court's language to define "same" to mean "closely related," "furthering the same purpose," "overlapping and interdependent ... presented together as a package" would substantially alter what in fact the statute says. *See Kyle v. Daniels,* 198 Ariz. 304, 306, ¶ 7, 9 P.3d 1043, 1045 (2000) ("we cannot read [an] implausible meaning into express statutory language."); *State v. Skiba,* 199 Ariz. 539, 541, ¶ 8, 19 P.3d 1255, 1257 (App.2001) ("when the statute's language is plain and unambiguous, we follow the text as written.").

¶ 20 Here, the differing bond propositions were not identical in their subject matter. Some dealt with funding for police and fire departments while others dealt with housing, education, streets and parks and recreation. These are not identical subjects.

¶ 21 Second, to determine what has historically been considered to logically characterize the "same subject" for ballot propositions, we find cases applying Arizona Constitution Article 21, § 1, as well as bond election cases, to be particularly instructive.

### *Arizona Constitution Article 21, § 1 and the Single Amendment Rule*

■ ¶ 22 Article 21, § 1 of the Arizona Constitution is commonly known as the

---

9. BOF also argues on appeal that even assuming the court's interpretation that overlapping propositions are included in the meaning of "same subject" the trial court would have had to find

that all of the propositions overlapped to find that the advertisements were "more than fifty percent devoted" to the same subject.

single subject rule, but recently it has been more aptly described as the single amendment rule.[10] *Clean Elections Institute, Inc. v. Brewer,* 209 Ariz. 241, 243, n. 1, ¶ 1, 99 P.3d 570, 572, n. 1 (2004). While this constitutional article only applies to ballot propositions involving an amendment to the Arizona Constitution, *Clean Elections,* 209 Ariz. at 244, ¶ 6, 99 P.3d at 573, we find the cases analyzing the composition of a single subject provide guidance in determining the meaning of "same subject" under A.R.S. § 16–912.01(H). *See Clean Elections,* 209 Ariz. at 243–44, n. 1, ¶¶ 1 & 7, 99 P.3d at 572–73, n. 1; *see also Tilson v. Mofford,* 153 Ariz. 468, 472, 737 P.2d 1367, 1371 (1987).

 ¶ 23 The purpose of the single subject rule is to give the voters a chance to express their opinion on unrelated propositions separately, and to avoid "logrolling" and requiring voters to "adopt measures of which in reality they disapprove, in order to secure the enactment of others they earnestly desire."[11] *Arizona Together v. Brewer,* 214 Ariz. 118, 120, ¶ 3, 149 P.3d 742, 744 (2007); *see also Kerby,* 44 Ariz. at 214, 36 P.2d at 551.

 ¶ 24 Determining whether a proposition complies with the single amendment rule involves a determination of whether its provisions are sufficiently related to a common purpose or principle so that the proposal constitutes a consistent and workable whole on the general topic so that all provisions should stand or fall as a whole. *Arizona Together,* 214 Ariz. at 121, ¶ 5, 149 P.3d at 745. Applying the test requires a

two-part analysis: (1) whether the provisions are topically related, i.e., they embrace the same general topic; and (2) the provisions are sufficiently interrelated so as to form a consistent and workable proposition that logically should stand or fall as a whole. *Id.* at 121, ¶ 6, 149 P.3d at 745; *see also Slayton v. Shumway,* 166 Ariz. 87, 90, 800 P.2d 590, 593 (1990); *State ex. rel. Jones v. Lockhart,* 76 Ariz. 390, 396, 265 P.2d 447, 451 (1953).

 ¶ 25 In enforcing this test, we consider "objective factors, such as whether various provisions are facially related, whether all the matters addressed by an initiative concern a single section of the constitution, whether the voters or the legislature historically has treated the matters addressed as one subject, and whether the various provisions are qualitatively similar in their effect on either procedural or substantive law." *Arizona Together,* 214 Ariz. at 122, ¶ 10, 149 P.3d at 746; *Clean Elections,* 209 Ariz. at 245, ¶ 12, 99 P.3d at 574.

¶ 26 Applying the above test, our courts have found some propositions violative and others not. *See Arizona Together,* 214 Ariz. at 123, ¶ 17, 149 P.3d at 747 (no violation where both provisions affect substantive law in the same way and although not logically dependent they clearly show a logical relationship because both pertain to the subject of the definition of marriage); *Korte v. Bayless,* 199 Ariz. 173, 177, ¶ 11, 16 P.3d 200, 204 (2001) (announcing non-exclusive objective factors to consider when applying the common purpose or principle test and determining proposed amendment involving provisions

10. "If more than one proposed amendment shall be submitted at any election, such proposed amendments shall be submitted in such a manner that the electors may vote for or against such proposed amendments separately." Arizona Constitution Article 21, § 1.

11. "Logrolling is a process where proponents of several separate proposals join them together in hopes of gaining votes for each that they would otherwise not receive." Matthew O. Gray, *Clean Elections Institute, Inc. v. Brewer: The Separate Amendment Rule of the Arizona Constitution,* 47 Ariz. L.Rev. 237, 238 (Spring 2005) (citing *Kerby v. Luhrs,* 44 Ariz. 208, 214–15, 36 P.2d 549, 552 (1934)). As described nearly a century ago, "[t]here may be in a given community such a strong sentiment in favor of incurring a public

debt for a particular purpose—for instance, as providing adequate and suitable accommodations for the public schools—that by combining a proposition of this popular character with one to create a public debt for a wholly different purpose, which would not as an independent measure commend itself to the unbiased judgment of the voters". *Rea v. La Fayette,* 130 Ga. 771, 61 S.E. 707, 708 (1908). Further, "when the number of separate and distinct questions to be combined and embraced in a single submission is increased, there is a corresponding increase in the unfairness of the mode of submission and of the chances that no true expression of the will of the people can be obtained." *Id.; Hart v. Bd. of Educ.,* 299 Mo. 36, 252 S.W. 441, 442 (1923) (doubleness is a species of legal fraud).

all related to management of state trust lands constituting a "multifaceted approach to a single reasonably narrow purpose"); *Regner v. Bayless,* 199 Ariz. 182, 184, ¶ 5, 16 P.3d 209, 211 (2001) (propositions involving two provisions serve the purpose of allowing competition to set telecommunications rates and represent a consistent and workable whole); *Shumway,* 166 Ariz. at 92, 800 P.2d at 595 (no violation because eleven provisions in proposition all were considered to be both procedural and relating to victims' rights); *Hood v. State,* 24 Ariz.App. 457, 464, 539 P.2d 931, 938 (1975) (no violation where two referenda measures proposed constitutional amendments involving tax exemptions for veterans, widows and household goods and the tax exemption qualification provisions included in each amendment were reasonably related and presented a coherent scheme of exemption). *Compare Clean Elections,* 209 Ariz. at 246–47, ¶¶ 18–23, 99 P.3d at 575–76 (violation where proposition sought to eliminate public funding of political campaigns, remove the independence of Clean Election Commission by subjecting it to legislative control and impose a surcharge on civil and criminal fines); *Taxpayer Protection Alliance v. Arizonans Against Unfair Tax Schemes,* 199 Ariz. 180, 182, ¶ 6, 16 P.3d 207, 209 (2001) (finding violation where three provisions called for requiring ballots to disclose if federal office candidates have signed a pledge to eliminate federal income taxes, eliminating state income taxes and requiring public approval to increase state revenue because proposition could not be said to constitute a consistent and workable whole so that the pledge provision should stand or fall with the other provisions); *Kerby,* 44 Ariz. at 221–22, 36 P.2d at 554–55 (finding violation where at least three distinct provisions were contained in one proposition including the method to tax copper mines, taxation of public utility corporations and establishing the tax commission as a constitutional body).

¶ 27 Here, the varying propositions are only facially similar on the highest plane of generality—that they deal with bonds. As our supreme court has noted, however, "taken to a sufficient degree of generality, nearly any group of provisions could claim some relationship." *Korte,* 199 Ariz. at 178, ¶ 15,

16 P.3d at 205. Once we pierce this facial validity and consider the specific subjects of the propositions—police and fire forces, education, parks, streets and housing—they are no more facially similar or similar in their objectives than the propositions in *Clean Elections, Taxpayer Protection* Alliance and *Kerby.*

¶ 28 Applying the test from the "single subject" rule to A.R.S. § 16–912.01(H) is also compatible with the requirement that we construe statutory language to fulfill the legislative intent underlying the statute. *Phelps Dodge Corp. v. Ariz. Dep't of Water Resources,* 211 Ariz. 146, 148, ¶ 9, 118 P.3d 1110, 1112 (App.2005). While we agree with the superior court that the overall legislative intent underlying A.R.S. § 16–912.01 is to require disclosure to the public of who is supporting a ballot proposition, the clearly-stated legislative intent limited such requirement under subsection (H) of that statute to require disclosure only when fifty percent or more of the advertisement dealt with the "same subject." While there is no legislative history to guide us on what the legislative intent was in using the words "same subject," we presume that the legislature knew and approved of the judicial branch's interpretation of the "single subject" concept under Arizona Constitution, Article 21, § 1. *See State v. Govorko,* 23 Ariz.App. 380, 383, 533 P.2d 688, 691 (1975) (legislature is deemed to know of prior judicial interpretation of statutes when it renumbers statute without amendment of the provision at issue).

¶ 29 Thus, our conclusion is consistent with such perceived legislative intent. Presumably, the legislative intent was to alert voters of the identity of supporters of ballot propositions dealing with the "same subject," so the voters could determine the possible implications of the propositions. This is especially true when various propositions deal with the same subject, but are actually adverse to or conflicting with each other such as those supporting bans on smoking but one of which is supported by the tobacco lobby. In contrast, in adding subsection (H), the legislature saw no need to require such identification when the advertisements dealt with more than one subject on

which voters could separately cast their ballots and which were not conflicting. Here, the voters could cast their ballots to approve some of the bond propositions, but not others, and the separate propositions were not necessarily dependent on each other and were not conflicting. Identification of supporters of all of the propositions, such as BOF, would not serve to identify the implications of voting on any one of the propositions.

### Bond Elections and the Natural Relationship Rule

■ ¶ 30 We find similar support for our conclusion from cases dealing specifically with bond propositions. There, "the pertinent principle is that two or more separate and distinct structures or units cannot be combined into one single proposition and submitted jointly as one question." K.A. Drechsler, Annotation, *Validity of Submission of Proposition to Voters at Bond Election as Affected by Inclusion of Several Structures or Units,* 4 A.L.R.2d 617, 623, § 4 (1949) (hereinafter "Drechsler"). "In the great majority of jurisdictions the general rule is well settled that . . . there must be a separate proposition on the ballot for each distinct, unrelated, and independent object or purpose for which indebtedness is contemplated, showing separately the amount desired for each". *Id.; see Parks v. School Dist. No. 1 of Yavapai County,* 22 Ariz. 18, 28–29, 193 P. 838, 842 (1920) (general purpose of election "to build schoolhouses and furnish needed equipment for holding the public schools[,] . . . were not separate purposes."); *see also Clark v. City of Los Angeles,* 160 Cal. 317, 116 P. 966, 967 (1911) (to authorize municipal indebtedness propositions submitted to the voter a single proposition is required); *Rea,* 61 S.E. at 707–08 (same); *Winston v. Wachovia Bank & Trust*

*Co.,* 158 N.C. 512, 74 S.E. 611, 614 (1912) (same).

¶ 31 One common denominator employed by the courts of the various states relating to bond elections and single subject propositions "is expressed by the requirement of a 'natural relationship.'" Drechsler, 4 A.L.R.2d at 622, § 6. The inquiry is whether the several parts of the project are so related that united they form in fact but one rounded whole.[12] Drechsler, 4 A.L.R.2d at 630, § 6; *Blaine v. Hamilton,* 64 Wash. 353, 116 P. 1076, 1081 (1911); *Coleman v. Town of Eutaw,* 157 Ala. 327, 47 So. 703, 708 (1908) (building of bridges and constructing streets "might compose one scheme or purpose for municipal improvement."); *Ostrander v. Salmon,* 20 Idaho 153, 117 P. 692, 695 (Id. 1911) (purchasing waterworks and erecting a public building could not be a single proposition).

¶ 32 Under both the topicality and interrelatedness test and the natural relationship test, the propositions would have amounted to a violation if presented as one proposition because they were not sufficiently related. *See generally, Clean Elections,* 209 Ariz. at 245, ¶ 12, 99 P.3d at 574; *Taxpayer Protection Alliance,* 199 Ariz. at 182, ¶ 6, 16 P.3d at 209; *Kerby,* 44 Ariz. at 221–22, 36 P.2d at 554–55. *See also, Ryan v. Gonzales,* 114 N.M. 346, 838 P.2d 963, 966 (1992) (" 'The betterment of the welfare of the people' is not a specified object that necessarily relates capital outlay projects to each other. Such a test for commonality does not satisfy the constitutional purpose of avoiding logrolling."); *Antuono v. Tampa,* 87 Fla. 82, 99 So. 324, 326–27 (1924) (seven objects for large bond issues including extension and repair of existing sewage system, opening and widening of a street, improvement of fire alarm system, erection of a garbage incinerator, extension of water mains, construction of a

12. "In the very nature of things no rule precisely defining doubleness can be laid down fitting each case . . . the rule is that, since doubleness cannot be defined except in a general way, each case must stand on its own facts." *State ex rel. Carrollton School Dist. v. Gordon,* 231 Mo. 547, 133 S.W. 44, 49 (1910) *overruled on other grounds by State ex rel. Pike County v. Gordon,* 268 Mo. 321, 188 S.W. 88, 93 (1916); Drechsler, 4 A.L.R.2d at 622, § 3 ("[T]here is a tendency in the decisions [of various state courts] to permit the inclusion of several structures or units in one proposition if the various objects serve identical purposes in differing territories, such as two schoolhouses or two highways, or if one of the objects is subordinated and incidental to the purpose of the main object, as is the case with the erection of a building and the purchase of the necessary equipment therefor.").

bridge and extension of a sea wall violated single subject rule); *Rea*, 61 S.E. at 707–09 (single proposition for the purpose of establishing and maintaining waterworks, maintaining electric lights, improving and extending the public school and providing adequate accommodations for school patrons and children was impermissible); *Denver v. Hayes*, 28 Colo. 110, 63 P. 311, 313–14 (1900) (bond election invalid after court determined eleven purposes for indebtedness including erection of public buildings, construction of public sewers, purchase of lands for parks, building reservoirs, and construction of bridges violated the single subject rule); *Winston*, 74 S.E. at 611 (invalidating bond election where single proposition for street improvements, sewerage, waterworks, school buildings, and larger hospital facilities involved distinct and unrelated propositions where street improvements were entirely disconnected from school buildings and larger hospital facilities were not a necessary municipal expense); *Re Validation Bonds*, 170 Miss. 886, 156 So. 516, 517 (1934) (invalidating bond election where single proposition was for schoolhouse, street paving and the installation of water meters).

## CONCLUSION

¶ 33 We cannot conclude that BOF's advertisements were devoted to propositions on the "same subject" for purposes of A.R.S. § 16–912.01(H). We decline to find that these differing bond propositions, authorizing differing amount of indebtedness and covering differing facets of traditional and non-traditional municipal functions, can be considered to be the "same subject" for purposes of A.R.S. § 16–912.01(H).

¶ 34 Only by construing "same subject" in an overly broad fashion as to diminish the applicability of subsection (H) can we say these bonds share topicality, interrelatedness or that they are naturally related. We decline to construe the legislature's language in such a fashion because it contradicts the plain meaning of the term "same subject" and it undermines a limitation that it is clear the legislature intended to apply.

¶ 35 While we presume the legislature's overall intention in A.R.S. § 16–912.01 was to require disclosure, it placed limitations on those requirements, and we apply the language of the statute as it is written. The legislature limited applicability of the Act to advertisements of which fifty percent or more of the content dealt with the same subject. BOF's advertisements are not governed by the disclosure provisions of the Act.

¶ 36 For the foregoing reasons, we vacate the judgment and direct the court on remand to enter judgment for BOF. We award costs on appeal to BOF upon its compliance with Arizona Rule of Civil Appellate Procedure 21.

CONCURRING: MICHAEL J. BROWN, Presiding Judge and LAWRENCE F. WINTHROP, Judge.