265 P.3d 370

**BT CAPITAL, LLC, an Arizona limited liability corporation, Plaintiff/Appellant/Cross–Appellee,**

**v.**

**TD SERVICE COMPANY OF ARIZONA, an Arizona corporation;  and RCS–Chandler, LLC, an Arizona limited liability company, Defendants/Appellees,**

**and**

**Point Center Financial, Inc., a foreign corporation, Defendant/Appellee/Cross–Appellant.**

**No. 1 CA–CV 10–0450.**

Court of Appeals of Arizona, Division 1, Department D.

Sept. 27, 2011.

As Amended Sept. 28, 2011.

The Doyle Law Firm, P.C. by William H. Doyle, Robert J. Lord, Phoenix, Attorneys for Plaintiff/Appellant/Cross–Appellee.

Jaburg & Wilk, P.C. by Kathi Mann Sandweiss, Roger L. Cohen, Phoenix, Attorneys for Defendants/Appellees.

Gallagher & Kennedy, P.A. by Thomas A. Maraz, Joseph E. Cotterman, Phoenix, Attor-

neys for Defendant/Appellee/Cross–Appellant.

## OPINION

IRVINE, Presiding Judge.

¶ 1 BT Capital, LLC ("BT") appeals the trial court's judgment granting motions to dismiss filed by TD Service Company of Arizona ("TD") and Point Center Financial, Inc. ("PCF"). PCF cross-appeals the trial court's denial of its request for attorneys' fees. In this opinion we consider whether TD, serving as PCF's trustee and bidding agent, may invalidate a nonjudicial deed of trust sale based upon its own failure to comply with statutory requirements in noticing the sale although there were no timely objections to the sale pursuant to Arizona Revised Statute ("A.R.S.") section 33–811(C) (2007). For the reasons that follow, we hold that a trustee's statutory power to postpone or continue a sale pursuant to A.R.S. § 33–810(B) (2007), does not extend to voiding a completed bidding process. Objections to the sale that are not timely raised pursuant to A.R.S. § 33–811(C) may not be grounds for setting aside the sale. Therefore, we reverse the trial court's judgment granting PCF and TD's motions to dismiss. Upon remand, the trial court should consider whether PCF can prove BT's bid was grossly inadequate.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Because the motions to dismiss discussed matters outside of BT's complaint, the parties stipulated to treat the motions as motions for summary judgment. Ariz. R.Civ.P. 12(b). On appeal we view the evidence and inferences drawn from the evidence in a light most favorable to BT, as it was the party opposing the motions. *Sonoran Desert Investigations, Inc. v. Miller,* 213 Ariz. 274, 276, ¶ 5, 141 P.3d 754, 756 (App. 2006).

¶ 3 In December 2006, PCF made a loan to RCS Chandler LLC ("RCS") to develop a property known as Elevation Chandler (the "Property"). The loan was secured by a deed of trust on the Property, with PCF as the beneficiary. After RCS defaulted on the loan, PCF appointed TD as trustee for the purpose of conducting a non-judicial trustee sale of the Property.

¶ 4 On January 11, 2008, TD recorded a notice of trustee's sale with the Maricopa County Recorder. The notice was published in the Arizona Capitol Times, posted at the Maricopa County courthouse and at an address believed to be the location of the Property. RCS filed for bankruptcy in April 2008, which delayed the sale. After several postponements, the sale was held on June 15, 2009. At the sale, TD served as bidding agent for PCF, auctioneer and trustee. Allegedly, a sale took place at noon that day with PCF acquiring the Property for a credit bid of $1,000,000. After a representative from BT showed the auctioneer a notice indicating the sale was to take place at 2:00 p.m., the auctioneer was directed by TD to re-cry the auction ("2009 sale"). TD had instructions from PCF to make an opening credit bid of $1,000,000 and continue making credit bids up to $25,000,000 if competing bids were placed. At the re-cried sale, an opening bid of $1,000,000 was made by TD on PCF's behalf. BT then bid $1,000,001. No further bids were placed, and TD announced BT as the winning bidder. BT had placed a $10,000 deposit in accordance with A.R.S. § 33–810(A). The next day, BT tendered the remaining balance of its bid price to TD. TD refused to accept the balance owed and informed BT that the sale was void because "there had been a mistake in communicating the correct bid instructions." TD attempted to return BT's $10,000 deposit, but BT refused to accept it.

¶ 5 BT filed a complaint, alleging contractual and tort claims against RCS, PCF and TD. TD filed a motion to dismiss, arguing lack of duty for the tort claims and impossibility of the contract claims. In addition to its failure to properly bid on PCF's behalf, TD also argued that it had made various errors in noticing the sale, including: (1) listing the incorrect address for the Property; (2) posting notice of trustee's sale at the incorrect location for the Property; (3) erroneously including land that was not a part of the Property; and (4) failing to provide notice to the holders of an easement across the Property, Propcor Associates and Propcor II As-

sociates, LLC (collectively, "Propcor"). PCF joined TD's motion to dismiss and filed its own motion to dismiss. RCS did not participate in the motion to dismiss proceedings.

¶ 6 BT filed a response and cross-motion for summary judgment as to TD and a response to PCF's motion to dismiss. Among other arguments, it alleged that any procedural irregularities were waived under A.R.S. § 33–811(C) because no one obtained an injunction to bar the trustee's sale before 5:00 p.m. the day before the sale. In a supplemental reply PCF further argued that the sale was void because the purchase price was grossly inadequate, citing *In re Krohn,* 203 Ariz. 205, 52 P.3d 774 (2002) and *Millennium Rock Mortg. Inc. v. T.D. Serv. Co.,* 179 Cal. App.4th 804, 102 Cal.Rptr.3d 544 (2009).

¶ 7 After oral argument, the trial court granted TD and PCF's motions to dismiss BT's complaint. In its ruling, the court discussed the procedural defects in the statutorily required notice and A.R.S. § 33–811(C). The court reasoned that because the deed of trust statutes mandate strict compliance, any trustee's sale that does not adhere to the statutory notice requirements is void. The court did not make a finding that BT's bid was inadequate. Nevertheless, citing *Millennium* as instructive, the court noted that "inadequacy in the sales price, coupled with irregularities in [the] sales process, may justify setting aside a foreclosure sale as a matter of equity."

¶ 8 As for A.R.S. § 33–811(C), the court concluded that the statute did not apply to TD and it therefore would not be prevented from "discovering and correcting an irregularity in the sale process prior to completion of the sale." The court did not address why or if A.R.S. § 33–811(C) applied to either RCS or PCF. The court also noted that Propcor, by virtue of its ownership of an easement over and across the Property, was required to be given notice of the sale. Because the court determined the sale was "void, or voided by the trustee" due to procedural irregularities, the court reasoned that there was no basis for BT's contractual claims. Further, the court noted that TD owed no duty to BT, which rendered BT's tort claims ineffective. The court concluded

that "it would appear that procedural irregularities which occurred in the course of a statutorily mandated process, and thereby voided the process, prevented [BT] from obtaining an inequitable windfall at the expense of the trustor and the beneficiary of the deed of trust."

¶ 9 BT timely appealed the trial court's judgment in favor of PCF and TD on its breach of contract, declaratory relief and specific performance claims. BT makes no argument on appeal regarding the dismissal of its tort claims, so that issue is not before us. PCF timely cross appealed the trial court's ruling denying its request for attorneys' fees. After the notices of appeal, another trustee's sale took place, at which PCF purchased the Property ("2010 sale").

## DISCUSSION

¶ 10 We review a grant of summary judgment de novo. *Simon v. Maricopa Med. Ctr.,* 225 Ariz. 55, 59, ¶ 9, 234 P.3d 623, 627 (App.2010). We will affirm a grant of summary judgment only if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

### I. Mootness.

¶ 11 PCF filed a motion to dismiss this appeal, arguing that BT's appeal was moot. PCF urges us to consider the issue again, arguing that BT's appeal is moot because BT failed to obtain an injunction blocking the 2010 sale and because the Property was sold to PCF itself during the pendency of this appeal. We have addressed an analogous argument previously and rejected it.

¶ 12 "A case becomes moot when an event occurs which would cause the outcome of the appeal to have no practical effect on the parties." *Arpaio v. Maricopa Cnty. Bd. of Supervisors,* 225 Ariz. 358, 361, ¶ 7, 238 P.3d 626, 629 (App.2010) (quoting *Sedona Private Prop. Owners Ass'n v. City of Sedona,* 192 Ariz. 126, 127, ¶ 5, 961 P.2d 1074, 1075 (App.1998)). In *Vinson v. Marton & Assocs.,* Vinson contracted to purchase a parcel of land owned by a partnership. 159 Ariz. 1, 3, 764 P.2d 736, 738 (App.1988). The

partnership refused to convey the land to Vinson once it received an offer of a higher purchase price. *Id.* Vinson filed suit, alleging breach of contract and requested specific performance. *Id.* The partnership argued that Vinson's appeal was moot because the subject property had been sold to a third party during the pendency of the appeal. *Id.* The court rejected this argument, noting that although specific performance may not be available because the property was sold to a third party, Vinson could request damages. *Id.* at 4–5, 764 P.2d at 739–40. Despite the fact that Vinson had listed only the remedy of specific performance in his complaint, the court stated he had not yet elected remedies and could move to amend his complaint pursuant to Arizona Rule of Civil Procedure ("Rule") 15(b) to assert a claim for damages instead of specific performance. *Id.*

¶ 13 Here, BT requested specific performance in regard to the sale of the Property and conveyance of title. BT also requested "actual consequential and other damages," "general and compensatory damages" and also "punitive damages." PCF argues that we do not have jurisdiction to consider the 2010 sale and that a money judgment in favor of BT would impose a judgment lien on the Property. We agree that we do not have jurisdiction over the 2010 sale. Consideration of the 2010 sale, including whether a judgment lien would permit BT to have an "end run" around the statutes, as PCF asserts, is beyond the scope of our review. Nevertheless, because BT requested damages, it may be granted relief on remand if it prevails. We express no opinion as to whether the trial court would be able to grant BT specific performance.

¶ 14 Additionally, PCF argues BT needed to obtain an injunction pursuant to Rule 65 to prevent the sale of the Property. As in *Vinson,* although BT did not request a stay from the trial court, that fact does not moot its appeal because an appealable issue remains. 159 Ariz. at 10, 764 P.2d at 745.

## II. Voiding the Sale.

¶ 15 BT contends the trial court incorrectly determined the 2009 sale was void, or properly voided by the trustee. Specifically, BT argues that because no party filed a timely objection to the trustee's sale pursuant to A.R.S. § 33–811(C), neither PCF nor TD had the ability to void the sale after the close of bidding. Under the facts of this case, we agree.

¶ 16 Non-judicial deed of trust sales in Arizona are governed by statutes. *See* A.R.S. §§ 33–801 to –821 (2007 & Supp.2010). Interpretation of those statutes is a question of law we review de novo. *City of Tucson v. Clear Channel Outdoor, Inc.,* 209 Ariz. 544, 547, ¶ 8, 105 P.3d 1163, 1166 (2005). When a statute's language is plain and unambiguous, we follow the text as it is written. *Bentley v. Bldg. Our Future,* 217 Ariz. 265, 270, ¶ 13, 172 P.3d 860, 865 (App.2007). When the statute's language is ambiguous or subject to more than one interpretation, we turn to the legislature's intent. *Id.* When interpreting a statute, the primary goal is to give effect to the legislature's intent. *DeVries v. State,* 221 Ariz. 201, 204, ¶ 6, 211 P.3d 1185, 1188 (App. 2009). "In pursuing this goal, we consider the statute's context; its language, subject matter, and historical background; its effects and consequences; and its spirit and purpose." *Bentley,* 217 Ariz. at 270, ¶ 13, 172 P.3d at 865 (quoting *Hayes v. Cont'l Ins., Co.,* 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994)). We may not ignore the clear and unequivocal language of a statute. *Deer Valley Unified Sch. Dist. No. 97 v. Houser,* 214 Ariz. 293, 299, ¶ 21, 152 P.3d 490, 496 (2007).

¶ 17 Under the statutory scheme, trustees are given various duties and powers. A trustee is responsible for certain nondelegable duties, including preparing and executing the notice of trustee's sale, cancellation of the notice of sale and the trustee's deed upon sale. A.R.S. § 33–803.01(A)(1)(a)–(c). A trustee may maintain an action against a party for certain acts harmful to the trust property. A.R.S. § 33–806(B). A trustee can also file an action to appoint a receiver and it can file an action to foreclose on the deed of trust. A.R.S. § 33–807(B), (C). A trustee is also vested with the "power of sale" of the trust property. A.R.S. § 33–807(A). As such, the trustee has the authori-

ty to postpone or continue the deed of trust sale. A.R.S. § 33–810(B).

¶ 18 Section 33–810(B) provides:

The person conducting the sale may postpone or continue the sale from time to time or change the place of the sale to any other location authorized pursuant to this chapter by giving notice of the new date, time and place by public declaration at the time and place last appointed for the sale.

The statute provides that the person conducting the sale, here TD, has the ability to postpone or continue the sale. *Id.* The statute also requires that person to provide notice of the change at the time and place of the last noticed sale. *Id.* In this case, TD plainly had the power to postpone or continue the 2009 sale up until the time the sale began for almost any reason, limited only by its duties to the trustor and beneficiary.

¶ 19 Once a sale commences with the start of bidding, however, a trustee's ability to postpone or continue a sale changes. Sections 33–810 and –811 detail the procedure. Each bid is deemed to be an irrevocable offer. A.R.S. § 33–810(A). The trustee becomes obligated to conditionally sell a property to the highest bidder, and must return deposits to the other bidders. *Id.* If the highest bidder fails to pay the balance due by 5:00 p.m. the next day, its deposit will be forfeited. A.R.S. § 33–811(A). At that point, the trustee has the "sole discretion" to either continue the sale to reopen bidding or offer the property to the second highest bidder. *Id.*

¶ 20 The statutes detailing the trustee's sale make bidders part of the transaction once bidding begins, and they are given both rights and obligations. Consequently, once bidding begins the trustee's ability to stop the process is limited. Here, TD would have the power to cancel the sale after accepting BT's bid only if specifically authorized to do so by statute. Under the facts of this case, we see no such authority.

¶ 21 Both TD and PCF focus on the statutory language that a trustee's "sale shall be completed on payment by the purchaser of the price bid in a form satisfactory to the trustee." A.R.S. § 33–810(A). Specifically,

TD asserts that "no contract is formed unless and until the bid price is paid to, and accepted by the [t]rustee." We disagree. Although the language plainly states that the sale is complete upon payment of the bid, a bidder acquires certain rights and liabilities after its bid is determined to be the winning bid. For example, the highest bidder who fails to pay the amount bid forfeits its deposit and the "bidder is liable to any person who suffers loss or expenses as a result, including attorney fees." *See* A.R.S. § 33–811(A).

¶ 22 In this case, TD offered the Property for sale for a specific opening bid set by PCF. Each interested bidder paid a $10,000 deposit to bid at the trustee's sale. A.R.S. § 33–810(A). The close of the trustee's sale and acceptance of the winning bid was marked by the fall of the auctioneer's hammer, or exclamation of an expression such as "sold." *See* 7 Am.Jur.2d *Auctions and Auctioneers* § 31 (2011). Once BT was announced as the winning bidder, it acquired enforceable rights. *See Udall v. T.D. Escrow Servs., Inc.,* 159 Wash.2d 903, 154 P.3d 882, 888, ¶ 18 (2007) (noting that when an auctioneer announced "sold," he accepted the bid and a contract was formed). BT attempted to tender the remaining balance of the bid price the following day in accordance with A.R.S. § 33–811(A). TD claimed the sale was void and it was unable to accept the remainder of BT's bid. BT's rights were not, however, extinguished merely because TD was unwilling to complete the sale.

¶ 23 BT also argues A.R.S. § 33–811(C) bars any claim that the sale was void. That statute provides, in relevant part:

The trustor, its successors or assigns, and all persons to whom the trustee mails a notice of a sale under a trust deed pursuant to § 33–809 shall waive all defenses and objections to the sale not raised in an action that results in the issuance of a court order granting relief pursuant to rule 65, Arizona rules of civil procedure, entered before 5:00 p.m. Mountain standard time on the last business day before the scheduled date of the sale.

A.R.S. § 33–810(C). There is no question that neither PCF nor RCS objected in any way to the sale in advance, much less ob-

tained an injunction against its occurrence. Therefore, PCF and RCS have waived any objections based on statutorily required noticing of the sale and whether those alleged deficiencies were grounds for setting the sale aside.

¶ 24 TD argues, however, that pursuant to the plain language of the statute, a trustee "is not one of the enumerated parties subject to the time limitation of A.R.S. § 33–811(C)." We agree that A.R.S. § 33–811(C) is not directly applicable to TD. Nevertheless, for the reasons discussed above, TD could not set aside the sale in its capacity as trustee because the statutory scheme did not give it the authority to do so. To the extent TD is attempting to assert the interests of PCF, for whom it was acting as an agent, it has no more rights than PCF would have and A.R.S. § 33–811(C) would apply.

¶ 25 TD and PCF assert the principle that the statutory provisions for non-judicial deed of trust sales must be strictly followed or a sale is void. *See Patton v. First Fed. Sav. & Loan Ass'n of Phoenix*, 118 Ariz. 473, 476, 578 P.2d 152, 155 (1978). Subsection C was added to A.R.S. § 33–811 in 2002, after *Patton* was decided. *See* 2002 Ariz. Sess. Laws, ch. 259, § 3. We presume that the legislature is aware of the existing state of the law interpreting a statute and therefore, intends to change the law when it amends a statute. *Bither v. Country Mut. Ins. Co.*, 226 Ariz. 198, 201 n. 5, ¶ 11, 245 P.3d 883, 886 n. 5 (App.2010); *State v. Hamblin*, 217 Ariz. 481, 484, ¶ 11, 176 P.3d 49, 52 (App.2008). Although a trustee's failure to strictly comply with the statutory provisions is a defense or a ground for objection to the sale, A.R.S. § 33–811(C) requires an objecting party who received notice to obtain an injunction no later than 5:00 p.m. on the day before the sale is held. To permit an objecting party who did not obtain an injunction prior to the sale to void a sale would render A.R.S. § 33–811(C) meaningless. *See CNL Hotels & Resorts, Inc. v. Maricopa County*, 226 Ariz. 155, 159, ¶ 15, 244 P.3d 592, 596 (App.2010) ("In interpreting statutes, courts are under a duty to give statutes operation and effect and should avoid a construction that leaves the statute meaningless or of no effect." (quoting *St. Joseph's Hosp. & Med. Ctr. v. Maricopa*

*County*, 130 Ariz. 239, 248, 635 P.2d 527, 536 (App.1981))). Consequently, we conclude that neither TD nor PCF could invalidate the sale for procedural errors after BT was recognized as the high bidder.

■ ¶ 26 Similarly, we reject PCF and TD's assertion that the sale was void for lack of proper notice to Propcor. TD's failure to provide notice to Propcor would not invalidate a completed trustee's sale. *See* A.R.S. § 33–808(E) (stating that an error or omission "other than an error in the legal description of the trust property or an error in the date, time or place of the sale, *shall not* invalidate a trustee's sale." (emphasis added)). Moreover, Propcor was not a party to the trial court proceedings, nor is it a party in this appeal. Therefore, we need not decide if its interests were affected by any failure to give it notice.

¶ 27 TD also argues that because it was not sufficiently included in a written document or documents the alleged contract violates the statute of frauds. *See* A.R.S. § 44–101 (2003). TD did not raise the statute of frauds in the trial court. PCF discussed the issue in its motion to dismiss, but did not argue it again in its reply and does not raise the statute of frauds in its brief on appeal. Moreover, the trial court did not base its ruling on the statute of frauds. Because TD did not raise the issue below, and PCF does not raise it here, the issue is not properly before us. *See Westin Tucson Hotel Co. v. State Dep't of Revenue*, 188 Ariz. 360, 364, 936 P.2d 183, 188 (App.1997) (noting issues not raised in the trial court are waived); *see also* Ariz.R.Civ.P. 13(a)(5) (stating that an appellate brief shall contain a "statement of the issues presented for review.").

¶ 28 Similarly, in this appeal we reject the argument that the alleged noon sale renders the later sale the same day void. The issue was only raised in the trial court in PCF's supplemental reply. Nothing in the record indicates that the trial court considered it, so we will not address it here.

¶ 29 For purposes of this appeal, we accept that TD failed to follow PCF's instructions and it apparently was this failure that allowed BT's bid to prevail. Nevertheless,

that failure by itself is not grounds for voiding the sale. PCF could have instructed TD to begin the bidding at $25,000,000 or some other level it would have found satisfactory for a cash bid. We can only speculate as to why PCF chose to start the bidding at $1,000,000 if it truly believed the Property was worth much more, but any procedural complaint that the highest bid was only $1,000,001 must be directed to TD, not BT.

¶ 30 We must also consider, however, whether TD's failure to follow PCF's instructions supports voiding the sale when considered in conjunction with the alleged inadequate sales price. As the trial court noted in its ruling, "inadequacy in the purchase price, coupled with irregularities in sales process, may justify setting aside a foreclosure sale as a matter of equity." *See Krohn*, 203 Ariz. at 207, ¶ 7, 52 P.3d at 776 ("A sale may be set aside, however, for inadequate price combined with other irregularity or for grossly inadequate price."). As noted above, irregularities in the pre-bidding processes were waived under A.R.S. § 33–811(C), but an error in the bidding itself is not covered by that statute.

¶ 31 We have not found any cases in Arizona addressing this issue, but mistakes by a lender or its agent in bidding have been discussed in the Restatement.

It is not uncommon for the *mortgagee,* rather than the mortgagor or a junior lienor, to attempt to set aside a sale based on an inadequate price. Note that in this setting, the real estate not only will be sold for less than fair market value, but usually, though not always, for a price that will not qualify as "grossly inadequate." Moreover, the foreclosure proceeding itself is normally not defective under state law. Rather, the mortgagee intends to enter a higher bid at the sale, but because of mistake or negligence on its part, actually makes a lower bid and a third party becomes the successful purchaser. Courts are deeply divided on this issue. Some take the position that mistake or negligence on the mortgagee's part should be treated as the functional equivalent of a defect under state law. As a result, these courts reason, the inadequate price plus the mistake or negligence are sufficient to justify setting aside the sale. Other courts, however, have less sympathy for the mortgagee in this setting. According to [one] court, "[mortgagee's] mistake was unfortunate, [but] it did not provide a basis to invalidate the sale which was consummated in complete accord with lawful procedure ... since the mistake was unilateral on [mortgagee's] part."

On balance, the latter approach to mortgagee mistake seems preferable. In general, third party bidding should be encouraged, and this section reflects that policy by making it extremely difficult to invalidate foreclosure sales based on price inadequacy alone. Where the foreclosure process itself complies with state law and the other parties to the process have not engaged in fraud or similar unlawful conduct, courts should be especially hesitant to upset third party expectations. This is especially the case where, as here, mortgagees can easily protect themselves by employing simple common-sense precautions.

Restatement (Third) of Property (Mortgages) § 8.3, Reporter's Note to cmt. c (1997) (internal citations omitted).

¶ 32 We agree. Bidding errors made by one party or its agents do not justify setting aside an otherwise valid sale simply because the end result is a sales price that is inadequate. Therefore, to the extent the trial court took into account the errors by PCF or TD in granting the motions to dismiss, we reverse.

¶ 33 This does not mean, however, that PCF cannot challenge the result of the auction by arguing that the sales price was "grossly" inadequate. In *Krohn*, our supreme court adopted Restatement (Third) of Property: Mortgages § 8.3, and held that "a sale of real property under power of sale in a deed of trust may be set aside solely on the basis that the bid price was *grossly* inadequate." 203 Ariz. at 214, ¶ 38, 52 P.3d at 783. Although the trial court here commented that the purchase price was "inadequate" in the context of addressing the alleged irregularities in the sale, it did not address the separate argument that gross inadequacy of

the sales price would by itself justify setting aside the sale.

¶ 34 BT argues that whether the sales price was grossly inadequate is a disputed issue of fact precluding summary judgment. We agree. There was limited evidence in the record regarding the value of the Property. BT submitted an affidavit of a real estate broker opining that the Property was worth under $250,000 per acre (for a total value of approximately $2,700,000). PCF argued that BT's bid was grossly inadequate as it was prepared to bid up to $25,000,000 for the Property. PCF had also commissioned its own valuation of the Property several months before the sale, which determined the value of the Property "as is" to be $36,000,000.

¶ 35 Given the fluctuations in the market for real estate, the fact that the debt on the Property exceeded $25,000,000, and therefore PCF could make a credit bid of that amount, is not conclusive evidence of the Property's value. Viewing the facts in the light most favorable to BT, we must accept that the Property might only have been worth $2,700,000 at the time of the sale. If so, we cannot say that a cash bid of $1,000,001 would necessarily be grossly inadequate or that a beneficiary would not accept such a bid. See Krohn, 203 Ariz. at 212, ¶ 29, 52 P.3d at 781 (noting the Restatement guidance that gross inadequacy will generally exist when the sales price is less than twenty percent of fair market value). Accordingly, the value of the Property is genuinely disputed.

¶ 36 BT contends, however, that because PCF set the opening bid at $1,000,000 the sales price of $1,000,001 could not, as a matter of law, be grossly inadequate. Specifically, it argues that PCF's opening bid was a representation of what PCF believed was an adequate price and it should be bound by its representation. Because PCF controlled the process and could have set a higher opening bid, this argument has some appeal. As our supreme court has noted, it is clear that the legislature has determined that "the risk of a below-market sale price belonged with the mortgagee." Krohn, 203 Ariz. at 212, ¶ 28, 52 P.3d at 781. Nevertheless, we read Krohn as requiring courts to consider actual fair market value in determining if equity requires a trustee's sale to be set aside. As the court noted: "At its core, this is a case about inequity on the one hand and unjust enrichment on the other." Id. at 213, ¶ 33, 52 P.3d at 782. Equity may not be served by giving conclusive effect to a bid that may have little relation to actual value. Here, there is no information in the record before us about whether PCF believed its opening bid represented an adequate sale price. Although BT is entitled to argue on remand that PCF's opening bid is evidence of fair market value and the trial court has discretion to consider PCF's actions in balancing the equities at stake, we decline to find as a matter of law that PCF's opening bid is conclusive evidence of that value. Therefore, we remand this issue for further proceedings.

### III. PCF's Cross Appeal

¶ 37 PCF argues the trial court should have awarded it attorneys' fees pursuant to A.R.S. § 12–341.01 (2003) because it prevailed on every claim asserted by BT. Because we reverse the trial court's judgment granting TD and PCF's motions to dismiss, any decision regarding attorneys' fees is premature. Therefore, we vacate the trial court's denial of fees to PCF, without prejudice to it readdressing the issue after a decision on the merits.

### IV. Attorneys' fees on appeal

¶ 38 Both PCF and TD request their attorneys' fees on appeal pursuant to A.R.S. § 12–341.01. Because neither TD nor PCF is the prevailing party on appeal, we deny their requests. We grant BT its costs on appeal contingent on its timely compliance with Arizona Rule of Civil Appellate Procedure 21. See A.R.S. § 12–342 (2003).

### CONCLUSION

¶ 39 We hold that a trustee may not invalidate a non-judicial deed of trust sale when there have been no timely objections filed pursuant to A.R.S. § 33–811(C) and no injunction issued. Additionally, given a trustee's statutory power to postpone or continue a sale pursuant to A.R.S. § 33–810(B), a trustee does not have the statutory authority

to void a completed bidding process. Accordingly, TD and PCF were not entitled to judgment as a matter of law. Therefore, we reverse the trial court's order granting summary judgment in favor of both TD and PCF, vacate the denial of attorneys' fees to PCF, and remand for further proceedings consistent with this opinion.

CONCURRING: JOHN C. GEMMILL and PHILIP HALL, Judges.