IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

THE STATE OF ARIZONA,                )
                                     )        2 CA-CR 2007-0166
                        Appellee,    )        DEPARTMENT A
                                     )
            v.                       )        O P I N I O N
                                     )
LANCE CHRISTIAN HAMBLIN,             )
                                     )
                        Appellant.   )
                                     )

APPEAL FROM THE SUPERIOR COURT OF GRAHAM COUNTY

Cause No. CR2006-123

Honorable D. Corey Sanders, Judge Pro Tempore

AFFIRMED

Terry Goddard, Arizona Attorney General
  By Randall M. Howe and Julie A. Done                              Phoenix
                                                        Attorneys for Appellee

Law Offices of Perry Hicks, P.C.
  By Adam Ambrose                                              Sierra Vista
                                                       Attorneys for Appellant

B R A M M E R, Judge.

¶1          A jury found appellant Lance Hamblin guilty of third-degree burglary and theft. In this opinion, we address Hamblin's argument that his actions did not constitute burglary under A.R.S. § 13-1506. In a separate, simultaneously filed memorandum decision, we

address other issues that do not meet the criteria for publication and conclude they, like the claim we resolve in this opinion, are without merit. *See* Ariz. R. Sup. Ct. 111(h); Ariz. R. Crim. P. 31.26.

**Factual and Procedural Background**

¶2 On appeal, "[w]e view the facts in the light most favorable to sustaining the verdict[s]." *State v. Cropper*, 205 Ariz. 181, ¶ 2, 68 P.3d 407, 408 (2003). At approximately 6:30 p.m. on January 3, 2006, W. saw a truck belonging to his friend, S., parked in a Wal-Mart parking lot. He pulled into the parking lot and parked next to S.'s truck, intending to go into the store and talk to S. As he was walking toward the store, he saw a Ford Bronco pull into the parking lot next to S.'s truck. A man got out of the Bronco and "started urinating right there in the parking lot." W. continued to watch "because something didn't seem right." W. saw the man walk between W.'s vehicle and S.'s truck. He then saw the dome light in S.'s truck go on and off. The man then got back in the Bronco and drove away, "squealing tires as he took off" and running a stop sign. W. wrote down the Bronco's license plate number.

¶3 After W. found S. in the store, he told S. what he had seen and gave him the license plate number. S. went to his truck and looked inside but initially did not notice anything missing. Later, as S. got in his truck to drive home, he noticed his radar detector was missing. He called the police and reported the incident, giving them the license plate number W. had recorded.

2

**¶4** Police determined the license plate number matched that of a Ford Bronco registered to Hamblin. An officer went to Hamblin's address, but neither Hamblin nor the Bronco was there. The officer returned later that night and saw the Bronco at the house. He then spoke with Hamblin, who told the officer that he had been at a meeting and had not been in the Wal-Mart parking lot earlier that evening.

**¶5** Three days later, Thatcher Police Department Detective Kendall Curtis went to Hamblin's house to speak with Hamblin and arrange an interview. Hamblin then admitted he had taken a radar detector out of a truck at Wal-Mart but claimed "he wanted to meet with the victim and make it right with the victim rather than [have] criminal charges [filed]." Hamblin said he could recover the radar detector, so Curtis "gave him until Monday morning to bring [it] to our office." Hamblin did not do so. Curtis then tried to reach him several times the following week without success.

**¶6** Hamblin was charged with third-degree burglary and theft. His first trial ended in a mistrial when the jury was unable to reach a verdict. At a second trial, the jury found Hamblin guilty of both counts.[1] The trial court suspended imposition of sentence and placed Hamblin on concurrent terms of supervised probation, the longer for four years. This appeal followed.

---

[1]Hamblin was charged with theft of property having a value of $1,000 or more but less than $2,000, a class six felony. *See* A.R.S. § 13-1802(E). The verdict form for theft in Hamblin's second trial, however, did not ask the jury to determine the value of the stolen property. Although S. testified at trial that a laptop computer was missing from his truck, the trial court declined to aggravate Hamblin's sentence or order restitution based on the value of that laptop computer, "finding that there is doubt as to the causation of the loss to [S.] for that amount."

**Discussion**

¶7 Hamblin asserts that, even if all the evidence presented at trial is taken as true, "this record still could not support a conviction for [third-degree] burglary under current law."[2] Section 13-1506 describes two ways to commit third-degree burglary. Under § 13-1506(A)(1), a person commits burglary by "[e]ntering or remaining unlawfully in or on a nonresidential structure or in a fenced commercial or residential yard with the intent to commit any theft or any felony therein." A person commits burglary under § 13-1506(A)(2) by "[m]aking entry into any part of a motor vehicle by means of a manipulation key or master key, with the intent to commit any theft or felony in the motor vehicle." The legislature added subsection (A)(2) to § 13-1506 in 2003. *See* 2003 Ariz. Sess. Laws, ch. 39, § 3.

¶8 Hamblin first argues that the charging documents in his case are unclear and asserts that § 13-1506(A)(2) "appears to [have been] the basis for prosecution" here. He reasons that we must vacate his conviction because he did not use a manipulation key or master key to gain entry to S.'s unlocked truck and thus did not violate § 13-1506(A)(2). But Hamblin misstates the record. The charging document alleged he committed burglary "by entering or remaining unlawfully in or on a nonresidential structure or in a fenced

---

[2]Hamblin admits he raises this argument for the first time on appeal. He has therefore "forfeit[ed] the right to obtain appellate relief unless [he] prove[s] that fundamental error occurred." *State v. Martinez*, 210 Ariz. 578, n.2, 115 P.3d 618, 620 n.2 (2005). Fundamental error is "'error going to the foundation of the case, error that takes from the defendant a right essential to [the] defense, and error of such magnitude that the defendant could not possibly have received a fair trial.'" *State v. Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d 601, 607 (2005), *quoting State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984). A conviction based on insufficient evidence is fundamental error. *See State v. Stroud*, 209 Ariz. 410, n.2, 103 P.3d 912, 914 n.2 (2005).

commercial or residential yard with the intent to commit any theft or any felony therein." Thus, he was clearly charged under § 13-1506(A)(1), not (A)(2), and, as we explain in our memorandum decision, the evidence produced at trial amply supported his conviction under that subsection.

¶9 Hamblin next argues that, although the definition of "structure" under § 13-1501(12) includes a "vehicle," the legislature did not intend to include a "motor vehicle" because § 13-1506(A)(2), not (A)(1), separately defines burglary of a motor vehicle. He urges us to adopt his interpretation as opposed to one that includes motor vehicles within the definition of a structure, claiming the latter would render subsection (A)(2) a "nullity" because any act encompassed by (A)(2) would also be encompassed by (A)(1). *See State v. Box*, 205 Ariz. 492, ¶ 10, 73 P.3d 623, 627 (App. 2003) (legislature is "presumed not to enact meaningless, redundant, or futile legislation").

¶10 We agree with Hamblin that it is difficult to envision a scenario that would be punishable under § 13-1506(A)(2) but not (A)(1). Subsection (A)(2) creates a crime narrower in scope than subsection (A)(1) because it requires the use of a manipulation or master key to gain entry to a motor vehicle. Subsection (A)(1), however, does not specify any particular method of entry that must be proven to support a conviction. *See State v. Van Dyke*, 127 Ariz. 335, 336, 621 P.2d 22, 23 (1980) ("Arizona cases clearly establish that even where the physical entry is objectively legitimate, entry will be illegal if the defendant's subjective intent is to commit a felony."); *State v. Jackson*, 121 Ariz. 277, 279, 589 P.2d 1309, 1311 (1979) ("[The] manner of entry is not material to . . . burglary."). And, as we

5

have noted, the definition of a structure encompasses vehicles. A.R.S. § 13-1501(12). Thus, an individual who has violated § 13-1506(A)(2) has also violated subsection(A)(1). Further, any act in violation of subsection (A)(2) would have violated § 13-1506 prior to the 2003 amendment.

¶11        We generally "presume the legislature is aware of existing statutes when it enacts new statutes, and we presume the legislature intends to change the law when it substantively changes the language of a statute." *Washburn v. Pima County*, 206 Ariz. 571, ¶ 11, 81 P.3d 1030, 1035 (App. 2003). That does not mean, however, that we must adopt an interpretation that is patently unreasonable. *See State v. Dixon*, 216 Ariz. 18, ¶ 7, 162 P.2d 657, 659 (App. 2007) (primary goal of statutory interpretation is to determine legislature's intent). Hamblin's interpretation of § 13-1506 would exclude from the definition of third-degree burglary the entry of a motor vehicle with intent to commit a felony therein unless the entry was accomplished by means of a manipulation or master key. That unduly restrictive interpretation is unsupported by either legislative history or public policy.

¶12        We find nothing in the legislative history evincing an intent by the legislature to narrow the scope of activity prohibited by the burglary statutes. When the legislature added subsection (A)(2) to § 13-1506 in 2003, it also added definitions of "manipulation key" and "master key" to § 13-1501 and expanded the crime of possessing burglary tools, defined in A.R.S. § 13-1505, to include "[b]uying, selling, transferring, possessing, or using a motor vehicle manipulation key or master key." *See* 2003 Ariz. Sess. Laws, ch. 39, §§ 1-3. The senate's fact sheet for that bill, S.B. 1057, states the bill's purpose is to add

6

"'manipulation keys' to the list of burglary tools that are illegal to buy, sell, transfer or possess." *Senate Fact Sheet*, S.B. 1057, 46th Leg., 1st Reg. Sess. (Ariz. 2003). In its background section, the fact sheet states such keys "are a rapidly increasing mode of auto theft." *Id.* Nothing in the legislative history suggests S.B. 1057 was intended to narrow the definition of a "structure" in § 13-1501(12) or to eliminate the crime of burglary of a motor vehicle under § 13-1506 except when entry is accomplished by use of a manipulation or master key. Nor can we discern any public policy reason for doing so.

¶13        Under Hamblin's theory, an individual who entered a motor vehicle by using another burglary tool, or no tool at all, could not be guilty of violating § 13-1506, while someone who used a manipulation or master key to gain entry would. And, by that reasoning, a person entering a motor vehicle without a manipulation or master key would be less culpable than a person who entered some other nonresidential structure—including, presumably, a nonmotorized vehicle. Had the legislature intended to curtail the scope of § 13-1506 in this fashion, it surely would have done so explicitly by amending the definition of "structure" in § 13-1501(12) to remove the term "vehicle."

¶14        There are reasonable explanations for the legislature's decision to amend § 13-1506. The legislature may properly amend statutes to clarify existing law and may well have intended to do that here. *See Rowe Int'l, Inc. v. Ariz. Dep't of Revenue*, 165 Ariz. 122, 127, 796 P.2d 924, 929 (App. 1990) ("[S]ome courts have found that a change in statutory language indicated the legislature's intent to clarify rather than change existing law."). But the 2003 amendments to the burglary statutes did more than merely clarify the law. As we

7

noted above, the legislature amended the statutes, at least in part, to combat a growing number of automobile-related thefts involving the use of manipulation keys. Section 13-1506(A)(2), unlike subsection (A)(1), does not implicate a complex definition of "structure."[3] This serves the legitimate purpose of simplifying the state's presentation of a case prosecuted under § 13-1506(A)(2). *See, e.g., People v. Worthy*, 167 Cal. Rptr. 402, 409 (App. Ct. 1980) (legislative purpose of amendments to insanity-defense statutes was to simplify issue for jury). For example, jurors would not have to decide if the trunk or storage area of a motor vehicle fell within the definition of "structure" under § 13-1501(12) because § 13-1506(A)(2) refers to "any part of a motor vehicle."

**¶15**        Further, viewed in light of the other 2003 amendments to the burglary statutes, the addition of subsection (A)(2) to § 13-1506 emphasizes the importance of combating specifically the increasing use of manipulation and master keys in automobile-related thefts and clarifies that the possession and use of such devices are prohibited.[4] *See, e.g., People v. Lapcheske*, 86 Cal. Rptr. 2d 565, 568 (App. Ct. 1999) (that legislature "clarified existing law by adding language that expressly prohibited the type of conduct defendant committed" did not mean conduct was not prohibited by previous statute); *cf. State v. McDermott*, 208

---

[3]Section 13-1501(12) defines a "structure" as "any vending machine or any building, object, vehicle, railroad car or place with sides and a floor that is separately securable from any other structure attached to it and that is used for lodging, business, transportation, recreation or storage."

[4]We also note there is nothing improper in the legislature's criminalizing the same conduct under different sections of the law as long as a defendant does not face double punishment. *See* A.R.S. § 13-116.

8

Ariz. 332, ¶ 13, 93 P.3d 532, 536 (App. 2004) (to afford due process, statute must give notice of prohibited conduct). Accordingly, for all the reasons stated above, we reject Hamblin's interpretation of § 13-1506 and conclude his conduct is clearly prohibited by subsection (A)(1) of that statute.

**Disposition**

¶16        We affirm Hamblin's convictions and sentences.

 

_____
J. WILLIAM BRAMMER, JR., Judge

CONCURRING:

_____
JOSEPH W. HOWARD, Presiding Judge

_____
JOHN PELANDER, Chief Judge

9