IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

THE STATE OF ARIZONA,       )
                            )     2 CA-CR 2008-0369
                Appellee,   )     DEPARTMENT B
                            )
        v.                  )     O P I N I O N
                            )
DEAN WILLIAM ZINSMEYER,      )
                            )
                Appellant.  )
                            )

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-20053892

Honorable Ted B. Borek, Judge

AFFIRMED IN PART; VACATED IN PART

Terry Goddard, Arizona Attorney General
  By Kent E. Cattani and Laura P. Chiasson                          Tucson
                                                      Attorneys for Appellee

Robert J. Hirsh, Pima County Public Defender
  By Michael J. Miller                                              Tucson
                                                      Attorneys for Appellant

B R A M M E R, Judge.

¶1        Appellant Dean Zinsmeyer appeals his convictions and sentences for theft of

a means of transportation and third-degree burglary.  He argues the trial court improperly

admitted statements he had made during interviews with police because he had invoked his right to counsel and had not knowingly and voluntarily waived his right to remain silent. He additionally asserts the prosecutor improperly vouched for witnesses and the court had considered invalid aggravating factors in sentencing. Zinsmeyer also contends his conviction for third-degree burglary was unsupported by the evidence and, alternatively, the third-degree burglary statute, A.R.S. § 13-1506(A)(1), is unconstitutionally vague. Finally, he argues the court at sentencing improperly entered a criminal restitution order including attorney fees and an indigent assessment fee. We vacate the criminal restitution order and Zinsmeyer's sentence for theft, but affirm both of his convictions and his sentence for third-degree burglary.

**Factual and Procedural Background**

¶2      On appeal, we view the facts in the light most favorable to sustaining Zinsmeyer's convictions and sentences. *See State v. Haight-Gyuro*, 218 Ariz. 356, ¶ 2, 186 P.3d 33, 34 (App. 2008). In September 2005, law enforcement officers located a truck that had been stolen several days earlier. Several items present when the truck was taken were missing when it was recovered, including racks installed in the truck's bed, the spare tire, and a tow hitch. The truck was found parked near a trailer home that Zinsmeyer had been visiting. Zinsmeyer told a Tucson Police Department (TPD) detective he had seen the truck and noticed it apparently had been stolen because the ignition had been removed. He admitted he had started the truck with a screwdriver and had driven it to pick up a friend,

2

despite his belief that it probably had been stolen. He also acknowledged he had not been given permission to take the truck.

¶3        A grand jury charged Zinsmeyer with theft of a means of transportation, third-degree burglary, and possession of burglary tools. After a two-day trial, the jury found him guilty of theft and burglary but acquitted him of possessing burglary tools. The jury also found Zinsmeyer had a prior felony conviction and had committed these offenses while on probation. The trial court sentenced him to an enhanced, partially aggravated, eight-year prison term for theft and to a concurrent, presumptive, 4.5-year term for burglary. This appeal followed.

**Discussion**

Motion to Suppress Statements

¶4        Zinsmeyer first contends the trial court erred in denying his motion to suppress the statements he had made to investigating detectives. In reviewing the denial of a motion to suppress evidence, we view the facts in the light most favorable to upholding the trial court's ruling and consider only the evidence presented at the suppression hearing. *See State v. Ellison*, 213 Ariz. 116, ¶ 25, 140 P.3d 899, 909 (2006). We review the factual findings underlying the court's ruling for an abuse of discretion, but we review its legal conclusions de novo. *See State v. Newell*, 212 Ariz. 389, ¶ 27, 132 P.3d 833, 841 (2006).

¶5        On September 13, 2005, Zinsmeyer participated in two interviews with detectives from TPD. During his first interview with detectives Ridgeway and Soltero,

3

Ridgeway advised Zinsmeyer of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), and asked if he would be willing to answer questions. At first, Zinsmeyer merely replied, "Possibly." Zinsmeyer told Ridgeway he would "let [the detectives] know if [he was] not going to answer something" and then responded to Ridgeway's questions. During the interview, Zinsmeyer noted he used crack cocaine and would "probably [better] know what was going on" if he could have some, because it helped him think clearly. Later in the interview, he told the detectives, "[I t]hink I need a lawyer." After the detectives did not respond, Zinsmeyer asked them, "Do I need a lawyer?" The detectives responded that it was "up to [Zinsmeyer]." When Zinsmeyer repeated the question, the detectives emphasized it was "[his] decision" and they "c[ould not] make that decision for [him]." Zinsmeyer said nothing further about an attorney and resumed answering the detectives' questions.

¶6 Later that day, TPD detective Spencer interviewed Zinsmeyer. At the start of the interview, Zinsmeyer told Spencer that Ridgeway had not informed him of his constitutional rights. Spencer then read Zinsmeyer the *Miranda* warnings, which Zinsmeyer stated he understood before he began answering Spencer's questions. Zinsmeyer told Spencer he had found the truck "sitting in [a] trailer park," the ignition had already been pulled out, he could tell it had been stolen, and he did not know who originally had stolen it. He admitted he had started the truck with a screwdriver he found on the seat and had used the truck for several days, knowing he was "st[ealing] a stolen car."

4

¶7 Before trial, Zinsmeyer moved to suppress his statements to Spencer, arguing that he had invoked his right to counsel during his previous interview with Ridgeway or, in the alternative, that he had not waived his rights knowingly and voluntarily. At the hearing on his motion, Zinsmeyer testified he had "stat[ed] that I think I need a lawyer" during the first interview but had not done so during the second. He also admitted that Spencer had read him the *Miranda* warnings during the second interview, that he understood his rights, and that he had waived them at that interview. Zinsmeyer testified, however, that he was "high" on the day of the interviews from having used crack cocaine and methamphetamine earlier that day, which he said had impaired his memory and cognition. He also stated that he had smoked crack cocaine the night before the interviews and during the interviews was experiencing withdrawal, which had affected his memory and understanding. After considering the testimony and reviewing the transcripts of Zinsmeyer's interviews, the court denied Zinsmeyer's motion, finding he knowingly, intelligently, and voluntarily had waived his rights and had not invoked his right to counsel.

¶8 Zinsmeyer asserts the trial court abused its discretion in refusing to suppress statements because he had "invoked his right to counsel by saying he thought he needed an attorney, and . . . , if he did not, . . . his waiver was [in]voluntary [and not knowing], in light of the fact that he was withdrawing from having used crack [cocaine] the night before." A person is entitled to *Miranda* warnings before being subjected to custodial interrogation. *Berkemer v. McCarty*, 468 U.S. 420, 434 (1984); *Miranda*, 384 U.S. at 444. "The right to

5

the presence of an attorney is one of the rights of which a person subject to custodial interrogation must be informed under *Miranda*." *Newell*, 212 Ariz. 389, ¶ 24, 132 P.3d at 841. And, if the person asserts his or her right to counsel, "all questioning must cease until an attorney is present or the [person] reinitiates communication." *Id.* If, however, "the accused has been given his *Miranda* warnings and makes a voluntary, knowing, and intelligent waiver of those rights[,] . . . statements [made to police officers] are admissible." *State v. Smith*, 193 Ariz. 452, ¶ 29, 974 P.2d 431, 438 (1999); *see generally State v. Tapia*, 159 Ariz. 284, 287, 767 P.2d 5, 8 (1988) ("Answering questions after police properly give the *Miranda* warnings constitutes a waiver by conduct.").

¶9 The state does not dispute the trial court's implicit finding that Zinsmeyer's interviews constituted custodial interrogation, and the record supports such a finding. *See Miranda*, 384 U.S. at 444 (custodial interrogation is "questioning initiated by law enforcement officers after a person has been . . . deprived of his freedom of action in any significant way"). *Miranda*'s procedural protections applied and, if Zinsmeyer indeed invoked his right to counsel, the court would have abused its discretion by not suppressing his subsequent statements. *See Newell*, 212 Ariz. 389, ¶ 28, 132 P.3d at 841.

¶10 "Not every reference to an attorney," however, "must be construed by police as an invocation of the suspect's right to counsel." *Ellison*, 213 Ariz. 116, ¶ 26, 140 P.3d at 910. Rather, an officer must only cease questioning if the defendant's request for counsel is "unambiguous[]." *Newell*, 212 Ariz. 389, ¶ 25, 132 P.3d at 841; *see Davis v. United*

6

*States*, 512 U.S. 452, 459 (1994). "If a reasonable officer in the circumstances would have understood only that the defendant might want an attorney, then questioning need not cease." *Newell*, 212 Ariz. 389, ¶ 25, 132 P.3d at 841 (emphasis removed); *see Davis*, 512 U.S. at 459.

¶11 Zinsmeyer's statement that he "th[ought]" he needed an attorney, together with his questions about whether the detectives thought he needed one, do not constitute an unambiguous request for counsel. *See, e.g.*, *Davis*, 512 U.S. at 455, 462 (finding suspect's equivocal statements, "Maybe I should talk to a lawyer" and "I think I want a lawyer before I say anything else," did not require questioning to cease); *Ellison*, 213 Ariz. 116, ¶ 29, 140 P.3d at 910 (deeming "I think I might want an attorney" equivocal request for counsel); *State v. Eastlack*, 180 Ariz. 243, 250-51, 883 P.2d 999, 1006-07 (1994) (finding statement "I think I better talk to a lawyer first" insufficient to invoke right to counsel). At best, they were an ambiguous suggestion he might want an attorney. Officers are not required to cease interrogation upon such statements.[1] *See Davis*, 512 U.S. at 461-62. Here, Ridgeway and Soltero had clearly told Zinsmeyer he could request an attorney, but Zinsmeyer neither did so nor pursued the issue further, either in that initial interview or in his subsequent interview with Spencer. The trial court, therefore, did not abuse its discretion in finding Zinsmeyer had not invoked his right to counsel.

---

[1]In his reply brief, Zinsmeyer asserts the officers nonetheless were required to seek clarification of his ambiguous comments. Assuming they were required to do so, they plainly did.

7

**¶12** Our inquiry, however, does not end there. Zinsmeyer contends that, even if he did not invoke his right to counsel, any waiver of his rights was neither knowing nor voluntary because he was under the influence of drugs. A waiver is knowing when "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986); *see also State v. Rivera*, 152 Ariz. 507, 513, 733 P.2d 1090, 1096 (1987). We look to the totality of the circumstances, including Zinsmeyer's "'background, experience and conduct'" in determining whether his waiver was made knowingly. *Rivera*, 152 Ariz. at 513, 733 P.2d at 1096, *quoting State v. Montes*, 136 Ariz. 491, 495, 667 P.2d 191, 195 (1983); *see Moran*, 475 U.S. at 421.

**¶13** The trial court found Zinsmeyer was "an educated [and] intelligent individual" with a General Education Diploma and an "electronics background." It also found he had "specific prior experience with the justice system[, namely,] he has a prior felony [conviction] and [was] advised of his rights with regard to that incident." The court concluded that, despite Zinsmeyer's assertions of impairment, "[t]here was no indication of any kind of impairment . . . other than his own [claim during his testimony]," and Zinsmeyer "was []coherent" during both interviews. Last, the court noted the detectives had told Zinsmeyer of his rights during both interviews, he had stated he understood his rights, and he "very, very explicit[ly]" had waived those rights. The record supports these findings. Therefore, we cannot say the court abused its discretion in finding, based on the totality of

the circumstances, that Zinsmeyer knowingly had waived his rights. *See Rivera*, 152 Ariz. at 513, 733 P.2d at 1096; *see also Ellison*, 213 Ariz. 116, ¶¶ 32-33, 140 P.3d at 911 (trial court not required to accept defendant's version of events).

¶14　　　　Nor was Zinsmeyer's waiver involuntary. Like the determination whether a statement was knowing and intelligent, "[v]oluntariness is a question of fact to be determined from the totality of the circumstances." *State v. Davolt*, 207 Ariz. 191, ¶ 29, 84 P.3d 456, 468 (2004). A necessary predicate to finding a statement involuntary is police "coercion or improper inducement." *Ellison*, 213 Ariz. 116, ¶ 30, 140 P.3d at 910; *see also Colorado v. Connelly*, 479 U.S. 157, 167 (1986); *State v. Smith*, 193 Ariz. 452, ¶ 14, 974 P.2d 431, 436 (1999). "When evaluating coercion, the defendant's physical and mental states are relevant to determine susceptibility to coercion, but alone are not enough to render a statement involuntary." *Smith*, 193 Ariz. 452, ¶ 14, 974 P.2d at 436. We look to the circumstances surrounding the statements to determine whether "the defendant's will was overborne" by improper police conduct. *Newell*, 212 Ariz. 389, ¶ 39, 132 P.3d at 843.

¶15　　　　Zinsmeyer does not contend, and the record does not show, that the detectives coerced or improperly induced him to give the statements. Rather, Zinsmeyer suggests the fact he was experiencing drug withdrawal during the interviews rendered his statements involuntary. At one time, Arizona case law "held that if a defendant was so intoxicated that he could not understand the meaning of his statements, then the statements were involuntary." *State v. Bravo*, 158 Ariz. 364, 371, 762 P.2d 1318, 1325 (1988). But, as we

9

have noted, following the United States Supreme Court's decision in *Connelly*, our supreme court determined "the question of voluntariness . . . must focus on police conduct, and not solely on the mental state of the defendant." *Bravo*, 158 Ariz. at 371, 762 P.2d at 1325; *see also Smith*, 193 Ariz. 452, ¶ 14, 974 P.2d at 436. Thus, the fact Zinsmeyer may have been intoxicated or experiencing withdrawal while being interrogated may be relevant to whether he was susceptible to coercive police conduct, but it cannot by itself render his statements involuntary. *See Smith*, 193 Ariz. 452, ¶ 14, 974 P.2d at 436; *State v. Tucker*, 157 Ariz. 433, 445-46, 759 P.2d 579, 591-92 (1988); *United States v. Coleman*, 208 F.3d 786, 791 (9th Cir. 2000) (heroin withdrawal alone insufficient to establish confession involuntary). Accordingly, we cannot say the trial court abused its discretion in denying Zinsmeyer's motion to suppress.

Prosecutorial Vouching

¶16      Zinsmeyer next argues the prosecutor "improperly vouched for the witnesses" during opening statement and closing arguments. There are two types of improper prosecutorial vouching: when the prosecutor "plac[es] the prestige of the government behind a witness" and when the prosecutor "suggests that additional unrevealed evidence supports a guilty verdict." *State v. Palmer*, 219 Ariz. 451, ¶ 6, 199 P.3d 706, 708 (App. 2008). "Wide latitude, however, is given in closing arguments, and counsel may comment on evidence and argue all reasonable inferences therefrom." *State v. Dumaine*, 162 Ariz. 392, 401, 783 P.2d 1184, 1193 (1989). Zinsmeyer acknowledges he did not object below; thus, we review only

10

for fundamental, prejudicial error. *See State v. Morris*, 215 Ariz. 324, ¶ 47, 160 P.3d 203, 214 (2007); *State v. Henderson*, 210 Ariz. 561, ¶¶ 19-20, 115 P.3d 601, 607 (2005). "In order to constitute fundamental error, the prosecutor's comment had to be so egregious as to deprive the defendant of a fair trial, and to render the resulting conviction a denial of due process." *State v. Van Den Berg*, 164 Ariz. 192, 196, 791 P.2d 1075, 1079 (App. 1990); *see also State v. Hughes*, 193 Ariz. 72, ¶ 26, 969 P.2d 1184, 1191 (1998) (prosecutorial misconduct must "'so infect[] the trial with unfairness as to make the resulting conviction a denial of due process'"), *quoting Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

¶17      Zinsmeyer first asserts the prosecutor's remark in her opening statement that, "through good law enforcement investigation, [the police] f[ound] Mr. Zinsmeyer," constituted improper vouching because it implied police "had found the correct criminal." But even if it is improper for a prosecutor to characterize the quality of a police investigation, this isolated statement was not so egregious as to result in a denial of due process. *See Van Den Berg*, 164 Ariz. at 196, 791 P.2d at 1079. Moreover, both at the beginning of the trial and before jury deliberations, the trial court instructed the jury the attorneys' statements were not evidence. We presume the jurors followed those instructions. *Newell*, 212 Ariz. 389, ¶ 68, 132 P.3d at 847.

¶18      Second, Zinsmeyer argues the prosecutor's statement in closing argument, during discussion of the possession of burglary tools charge, that "the state is satisfied the burglary with the motor vehicle and what tool is it?" improperly suggested "the state was

11

satisfied burglary occurred." Zinsmeyer contends this statement was an assertion the prosecutor was "satisfied with the evidence" and therefore "believed all of the witnesses." We disagree. Although the statement is difficult to understand, read in context, it is nothing more than an assertion the state had presented sufficient evidence a burglary had occurred, followed by argument that Zinsmeyer had committed the burglary with tools found in the truck. The prosecutor's statement did not "place[] the prestige of the government behind a witness" or "suggest[] that additional unrevealed evidence support[ed] a guilty verdict." *Palmer*, 219 Ariz. 451, ¶ 6, 199 P.3d at 708. Thus, it did not constitute improper vouching. *See State v. Bible*, 175 Ariz. 549, 602, 858 P.2d 1152, 1205 (1993) ("[D]uring closing arguments counsel may summarize the evidence, make submittals to the jury, urge the jury to draw reasonable inferences from the evidence, and suggest ultimate conclusions.").

¶19        Last, Zinsmeyer contends the prosecutor improperly characterized the defense closing argument as "attacking what police did instead of looking at what the defendant did," reasoning the prosecutor's statement "impli[ed] . . . that the police were too trustworthy to warrant attack." When she made this comment, the prosecutor was responding to purported deficiencies in the police investigation that Zinsmeyer had identified in his closing argument. Zinsmeyer cites no authority, and we find none, suggesting a prosecutor may not respond to a defendant's argument that law enforcement's investigation of a crime was inadequate. There was nothing improper in the prosecutor's argument.

12

<u>Improper Aggravating Factors</u>

¶20        As previously noted, the jury found Zinsmeyer had stolen the truck while on probation and had a prior felony conviction. After trial, the case was consolidated for sentencing with two other cases, one in which Zinsmeyer had pled guilty and another in which he had admitted a probation violation. The trial court sentenced him to an enhanced, partially aggravated, eight-year prison term for the theft conviction in this case, finding as aggravating factors that he was on probation at the time of the offense and—mistakenly— that "the offense involved accomplices and was committed for pecuniary gain." *See* A.R.S. § 13-1814(D) (theft of means of transportation class three felony); A.R.S. § 13-604(B) (maximum aggravated prison term thirteen years); *see generally* A.R.S. § 13-702(C) (listing aggravating factors).[2] That the offense was committed while the defendant was on probation is not a specifically listed aggravating factor and, therefore, falls under the "catch-all" provision of former § 13-702(C)(24): "Any other factor that the state alleges is relevant to the defendant's character or background or to the nature or circumstances of the crime." That provision is identical to the current catch-all provision found in A.R.S. § 13-701(D)(24).

¶21        Zinsmeyer asserts the trial court improperly found as aggravating factors that the theft was committed for pecuniary gain and with accomplices. The state concedes those

---

[2]Significant portions of Arizona's criminal sentencing code have been amended and renumbered, effective "from and after December 31, 2008." *See* 2008 Ariz. Sess. Laws, ch. 301, §§ 1-120. Unless otherwise noted, we refer to the versions of those statutes applicable at the time of Zinsmeyer's offense. *See* 2005 Ariz. Sess. Laws, ch. 188, § 1 (§ 13-604); 2005 Ariz. Sess. Laws, ch. 20, § 1; ch. 133, § 1; ch. 166, § 1 (§ 13-702).

13

factors were found improperly, noting the court "apparently confused" the facts of this theft with those of another of Zinsmeyer's offenses for which he was being sentenced at the same hearing. The transcript of the sentencing hearing shows that, when discussing Zinsmeyer's conviction in another matter, the state had argued the sentence for that conviction should be aggravated based on the presence of accomplices and Zinsmeyer's apparent pecuniary motive. The state made no such allegations regarding the convictions in this matter.

¶22 Zinsmeyer argues our supreme court's recent decision in *State v. Schmidt*, 220 Ariz. 563, 208 P.3d 214 (2009), requires us to vacate his sentence for theft and remand for resentencing.[3] The defendant in *Schmidt* had been sentenced to an aggravated prison term based solely on the catch-all provision. *Id.* ¶ 3. The supreme court noted that facts exposing a defendant to a sentence beyond the presumptive term are "the functional equivalent[s] of an element of an aggravated offense." *Id.* ¶ 7. Thus, the court reasoned, it must "assess the vagueness of the catch-all aggravator in Arizona's sentencing scheme when it alone is used

---

[3]In his opening brief, Zinsmeyer argued that, because the trial court relied on two improper aggravating factors, we must vacate his sentence and remand for resentencing under *State v. Peña*, 209 Ariz. 503, ¶ 24, 104 P.3d 873, 879 (App. 2005). Our supreme court decided *Schmidt* while this appeal was pending, and we requested the parties submit supplemental briefs on its application. Because we find *Schmidt* controlling, we need not reach Zinsmeyer's additional argument that his sentence was otherwise improper. Additionally, in an argument heading in his opening brief, Zinsmeyer asserts the trial court erroneously considered the improper aggravating factors in imposing a presumptive term of imprisonment for his third-degree burglary conviction. But Zinsmeyer never develops an argument in support of this assertion and argues only that his theft sentence was improperly aggravated. The record, moreover, shows the court did not rely on the disputed aggravating factors when determining Zinsmeyer's sentence for his burglary conviction. We therefore do not consider the propriety of Zinsmeyer's burglary sentence.

to increase a defendant's maximum potential sentence." *Id.* Determining the catch-all's language to be "patently vague," the court determined it gives a sentencing court "virtually unlimited post hoc discretion to determine whether the defendant's prior conduct is the functional equivalent of an element of the aggravated offense." *Id.* ¶¶ 9-10. Thus, the court concluded that "increas[ing] a defendant's statutory maximum sentence" based solely on the catch-all provision "violates due process." *Id*. ¶ 10.

¶23    The state argues that *Schmidt* is inapplicable because the trial court also relied on Zinsmeyer's prior felony conviction to aggravate his sentence. But the state misinterprets the court's sentencing minute entry and colloquy. The court sentenced Zinsmeyer to an enhanced sentence based on his prior conviction. *See* A.R.S. § 13-604(B). Although its minute entry lists Zinsmeyer's prior felony conviction as a "[c]ircumstance[]" relevant to his sentence, while pronouncing Zinsmeyer's sentence, the court did not cite his prior conviction as an aggravating factor. "Where there is a discrepancy between the oral sentence and the written judgment, the oral pronouncement of sentence controls." *State v. Hanson*, 138 Ariz. 296, 304-05, 674 P.2d 850, 858-59 (App. 1983); *see also State v. Leon*, 197 Ariz. 48, n.3, 3 P.3d 968, 969 n.3 (App. 1999). Thus, although the court could have relied on Zinsmeyer's prior conviction to aggravate his sentence, it did not do so. *See State v. LeMaster*, 137 Ariz. 159, 166, 669 P.2d 592, 599 (App. 1983) ("Double jeopardy or double punishment principles do not preclude the trial court from using the prior conviction to impose an enhanced

sentence under the recidivist statute, A.R.S. § 13-604, and to find aggravating circumstances under A.R.S. § 13-702.").

**¶24** Consequently, without the improper aggravating factors listed by the trial court—pecuniary gain and the presence of accomplices—the only remaining aggravating factor actually found by the court was the fact Zinsmeyer had committed theft while on probation, which, as we noted above, falls within the catch-all provision. Thus, under *Schmidt*, the court could not aggravate Zinsmeyer's sentence solely on that basis. *See* 220 Ariz. 563, ¶ 10, 208 P.3d at 217. But, as Zinsmeyer points out, the supreme court in *Schmidt* addressed a previous version of the catch-all provision, which read: "'Any other factors which the court may deem appropriate to the ends of justice.'" *Id*. ¶ 8, *quoting former* § 13-702(D)(13). The catch-all applicable in effect at the time Zinsmeyer committed theft instead reads: "Any other factor that the state alleges is relevant to the defendant's character or background or to the nature or circumstances of the crime." § 13-702(C)(24). We agree with Zinsmeyer, however, that *Schmidt*'s reasoning nonetheless applies.

**¶25** Because it encompasses only factors alleged by the state that relate to the defendant's character or background or to the nature of the crime, the current version of the catch-all arguably narrows the "virtually unlimited . . . discretion" the language of the former provision afforded a trial court. *Schmidt*, 220 Ariz. 563, ¶ 10, 208 P.3d at 217. But, when committing an offense, a defendant would still lack notice that his or her probation status—or any other of an essentially unlimited set of facts or circumstances—could serve to increase

16

the length of any sentence ultimately imposed beyond the presumptive term.[4] *See State v. Steiger*, 162 Ariz. 138, 141, 781 P.2d 616, 619 (App. 1989) ("[A] penal statute is vague if it fails to give persons of average intelligence reasonable notice of what behavior is prohibited or is drafted in such a manner that it permits arbitrary and discriminatory enforcement."). If used to supply the sole aggravating factor, the current catch-all, like the former, effectively adds as an element to any crime "'anything else . . . the state may someday later find relevant.'" *Schmidt*, 220 Ariz. 563, ¶ 9, 208 P.3d at 217, *quoting State v. Price*, 217 Ariz. 182, ¶ 27, 171 P.3d 1223, 1228 (2007) (Hurwitz, J., concurring). We therefore find the current version of the catch-all provision is as "patently vague" as the supreme court found the former. *Schmidt*, 220 Ariz. 563, ¶ 9, 208 P.3d at 217.

¶26 Zinsmeyer admits he did not object to the trial court's imposition of an aggravated sentence. Thus, he has forfeited the right to relief unless he can show fundamental, prejudicial error occurred. *See Henderson*, 210 Ariz. 561, ¶¶ 19-20, 115 P.3d at 607. Imposition of an illegal sentence, however, constitutes fundamental error. *State v. Alvarez*, 205 Ariz. 110, ¶ 18, 67 P.3d 706, 712 (App. 2003). And we agree with Zinsmeyer that he was prejudiced. Although, as noted, the trial court could have found Zinsmeyer's prior conviction to be an aggravating factor, it did not do so. Thus, in light of *Schmidt*, it is

---

[4]A defendant would, of course, have notice that committing an offense while on probation would result in the statutory minimum sentence being the presumptive term. *See* A.R.S. § 13-604.02(B). But that is not the same as notice that committing an offense while on probation could expose a defendant to a sentence exceeding the presumptive term. Thus, we see no principled reason to treat a defendant's probation or release status as different than any other factor falling under the catch-all provision.

likely the trial court would impose a different sentence on remand. *See State v. Munninger*, 213 Ariz. 393, ¶ 14, 142 P.3d 701, 705 (App. 2006) (to demonstrate prejudice, defendant must offer more than "speculat[ion] that the sentencing judge" might have imposed lesser sentence); *cf. Henderson*, 210 Ariz. 561, ¶ 28, 115 P.3d at 609 (defendant demonstrates prejudice if "reasonable jury applying the correct standard of proof could have reached a different conclusion than did the trial judge"). Accordingly, for the reasons stated, we vacate Zinsmeyer's sentence for theft and remand the case to the trial court for resentencing.

Sufficiency of the Evidence of Third-Degree Burglary

¶27       Zinsmeyer claims the state presented insufficient evidence to support his conviction for burglary in the third degree. His sole argument on this claim is that the subsection of the third-degree burglary statute under which he was convicted, A.R.S. § 13-1506(A)(1), does not apply to vehicles "which cannot be inhabited." Although Zinsmeyer moved for a judgment of acquittal at trial pursuant to Rule 20, Ariz. R. Crim. P., he did not make the argument he now raises on appeal. Therefore, he has forfeited this argument absent prejudicial, fundamental error. *See Henderson*, 210 Ariz. 561, ¶¶ 19-20, 115 P.3d at 607. A conviction based on insufficient evidence constitutes fundamental error. *State v. Stroud*, 209 Ariz. 410, n.2, 103 P.3d 912, 914 n.2 (2005). Likewise, a conviction based on a nonexistent theory of liability is fundamental error. *See State v. Ontiveros*, 206 Ariz. 539, ¶ 17, 81 P.3d 330, 333 (App. 2003).

18

¶28     When interpreting a statute, "[o]ur goal . . . is to discern and implement the intent of the legislature." *Id.* ¶ 8. We first look to the plain language of the statute as the best indicator of legislative intent. *See State v. Christian*, 205 Ariz. 64, ¶ 6, 66 P.3d 1241, 1243 (2003). Words are given their "'ordinary meaning unless it appears from the context or otherwise that a different meaning'" controls. *State v. Hoggatt*, 199 Ariz. 440, ¶ 8, 18 P.3d 1239, 1242 (App. 2001), *quoting Sierra Tucson, Inc. v. Pima County*, 178 Ariz. 215, 219, 817 P.2d 762, 766 (App. 1994). We will not adopt an interpretation of a statute that is "patently unreasonable" or one that is "unduly restrictive" when such an interpretation is unsupported by legislative history or public policy. *State v. Hamblin*, 217 Ariz. 481, ¶ 11, 176 P.3d 49, 52 (App. 2008).

¶29     Section 13-1506(A)(1) provides that a person commits third-degree burglary by "[e]ntering or remaining unlawfully in or on a nonresidential structure . . . with the intent to commit any theft or any felony therein." Section 13-1501(12), A.R.S., defines the term "[s]tructure" as "any vending machine or any building, object, vehicle, railroad car or place with sides and a floor that is separately securable from any other structure attached to it and that is used for lodging, business, transportation, recreation or storage." This court recently confirmed that § 13-1506(A)(1) includes burglary of a motor vehicle. *See Hamblin*, 217 Ariz. 481, ¶¶ 9, 15, 176 P.3d at 52, 53. And a truck is plainly a vehicle. *See* A.R.S. § 13-105(40) ("[v]ehicle" means a device by which any person "is, may be or could have been transported"). Thus, the legislature must have intended third-degree burglary to include

19

burglary of a truck. *See Christian*, 205 Ariz. 64, ¶ 6, 66 P.3d at 1243 (plain language best indicator of legislative intent).

¶30        Zinsmeyer attempts to inject ambiguity into the statutes by emphasizing the definition of the phrase "[e]nter or remain unlawfully." As provided in § 13-1501(2), the phrase is defined as

> an act of a person who enters or remains on *premises* when the person's intent for so entering or remaining is not licensed, authorized or otherwise privileged except when the entry is to commit theft of merchandise displayed for sale during normal business hours, when the premises are open to the public and when the person does not enter any unauthorized areas of the premises.

(Emphasis added.) Zinsmeyer observes the term "premises" is not defined in the statute and offers a dictionary definition of the term that restricts it to a "house or building, along with its grounds." *See Black's Law Dictionary* 1219 (8th ed. 2004). Thus, Zinsmeyer argues, the use of the term "[e]ntering or remaining unlawfully" in § 13-1506(A)(1) means third-degree burglary under that subsection is only accomplished when a person enters or remains in a house or building or its grounds. Because a truck is not a house, a building, or grounds, Zinsmeyer posits that trucks—and all vehicles that cannot be inhabited—must necessarily fall outside the scope of § 13-1506(A)(1).

¶31        Were we to accept Zinsmeyer's argument, we would have to define "vehicle," as used in the definition of "[s]tructure" in § 13-1501(12), as "a vehicle that can be inhabited." But, had the legislature intended the term "vehicle" to have such a restrictive

20

interpretation, it would have said so expressly. *See Hamblin*, 217 Ariz. 481, ¶ 11, 176 P.3d at 52 (court will not adopt unduly restrictive and unsupported interpretation). And the definition of "[e]nter or remain unlawfully" in § 13-1501(2) is clearly focused on the unauthorized nature of the act of entering or remaining in a particular place, whereas the various statutory definitions of residential and nonresidential "structure[s]" in § 13-1501(10), (11), and (12) differentiate between the types of places entered as determining the degree of burglary committed. *See* §§ 13-1506, 13-1507.

¶32 We conclude it would be patently unreasonable to construe the word "premises" in § 13-1501(2) as an unexpressed limitation on the word "vehicle" in § 13-1501(12). *See Hamblin*, 217 Ariz. 481, ¶ 11, 176 P.3d at 52 (court will not adopt unreasonable construction). Reading the statutes together and in context makes clear that third-degree burglary includes an act of entering or remaining unlawfully in a truck. *See Hoggatt*, 199 Ariz. 440, ¶ 8, 18 P.3d at 1242 (court considers context of statute in determining meaning of terms).

¶33 Thus, the jury properly could find Zinsmeyer guilty of third-degree burglary if it found he had remained unlawfully in a truck with the intent to commit theft of that truck. § 13-1506(A)(1). Substantial evidence, including his own testimony, supports the jury's finding that he did so. Because Zinsmeyer otherwise does not challenge the sufficiency of the evidence to support this conviction, he has failed to show error, fundamental or otherwise. *See Henderson*, 210 Ariz. 561, ¶ 23, 115 P.3d at 608.

21

Vagueness Claim

**¶34** In the alternative, Zinsmeyer argues the third-degree burglary statute is unconstitutionally vague. He acknowledges he did not raise this argument below, but this court may consider a vagueness challenge to a statute even when raised for the first time on appeal. *See State v. Anderson*, 199 Ariz. 187, ¶ 14, 16 P.3d 214, 218 (App. 2000).

**¶35** A statute is "unconstitutionally vague if it does not give persons of ordinary intelligence a reasonable opportunity to learn what it prohibits and does not provide explicit standards for those who will apply it." *State v. Takacs*, 169 Ariz. 392, 394, 819 P.2d 978, 980 (App. 1991). The party challenging a statute's validity has the burden of overcoming a strong presumption of constitutionality. *See State v. McMahon*, 201 Ariz. 548, ¶ 5, 38 P.3d 1213, 1215 (App. 2002). "[D]ue process does not require that a statute be drafted with absolute precision." *Takacs*, 169 Ariz. at 395, 819 P.2d at 981. Additionally, the omission of an explicit definition for a statutory term or the fact that a statute may be susceptible to different interpretations does not render the statute unconstitutionally vague. *State v. Lefevre*, 193 Ariz. 385, ¶ 18, 972 P.2d 1021, 1026 (App. 1998).

**¶36** Zinsmeyer argues § 13-1506(A)(1) is unconstitutionally vague because of the purported contradiction between the definition of "[s]tructure" in § 13-1501(12) to include vehicles and his proffered dictionary definition of "premises," a term used in § 13-1501(2), which excludes vehicles. Zinsmeyer claims that, because of this contradiction, a person of ordinary intelligence would not know whether the third-degree burglary statute applies to

22

vehicles. But, in keeping with our analysis of Zinsmeyer's sufficiency-of-the-evidence claim, we conclude the inclusion of the statutorily undefined term "premises" in § 13-1501(2) cannot reasonably be interpreted to exclude "vehicles" from the express definition of "[s]tructure" in § 13-1501(12). The use of the word "premises" is at worst imprecise, and we will not declare a statute invalid simply because it might have been "written with greater precision." *Takacs*, 169 Ariz. at 395, 819 P.2d at 981. We see no likelihood that a person of reasonable intelligence would not understand that § 13-1506(A)(1) applies to vehicles, which are specifically included in the definition of structure in § 13-1501(12). Therefore, Zinsmeyer has not sustained his burden to overcome the presumption of constitutionality. *See McMahon*, 201 Ariz. 548, ¶ 5, 38 P.3d at 1215.

Criminal Restitution Order

¶37        At sentencing, the trial court entered a criminal restitution order requiring Zinsmeyer to pay $400 in attorney fees and a $25 indigent assessment fee. *See* A.R.S. § 13-805. We agree with the parties that this was improper; such orders may only be entered at the completion of a defendant's sentence. *See* § 13-805(A); *State v. Lewandowski*, 220 Ariz. 531, ¶¶ 4, 11, 207 P.3d 784, 786, 788 (App. 2009) (early entry of restitution order at sentencing illegal "because it requires a defendant to make additional payments that are not authorized by law"). Zinsmeyer admits he did not raise this issue below. *See Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d at 607. The premature entry of a criminal restitution order, however, constitutes an illegal sentence, which is fundamental, reversible error.

*Lewandowski*, 220 Ariz. 531, ¶ 15, 207 P.3d at 789.  We therefore vacate the criminal restitution order.

**Disposition**

¶38        For the reasons stated, we vacate both Zinsmeyer's sentence for theft and the criminal restitution order.  We affirm his convictions for theft and third-degree burglary and his sentence for third-degree burglary.

 

 

_____
J. WILLIAM BRAMMER, JR., Judge

CONCURRING:

 

_____
PETER J. ECKERSTROM, Presiding Judge

 

_____
GARYE L. VÁSQUEZ, Judge