IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

JAN 12 2011

COURT OF APPEALS
DIVISION TWO

| | | |
|---|---|---|
| WILLIAM ALLEN LEAR, | ) | |
| | ) | 2 CA-SA 2010-0074 |
| Petitioner, | ) | DEPARTMENT A |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| HON. RICHARD S. FIELDS, Judge of | ) | |
| the Superior Court of the State of | ) | |
| Arizona, in and for the County of Pima, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE STATE OF ARIZONA, | ) | |
| | ) | |
| Real Party in Interest. | ) | |
| | ) | |

SPECIAL ACTION PROCEEDING

Pima County Cause No. CR20092214001

JURISDICTION ACCEPTED; RELIEF DENIED

Waterfall, Economidis, Caldwell,
Hanshaw & Villamana, P.C.
  By James W. Stuehringer                                      Tucson
                                          Attorneys for Petitioner

Barbara LaWall, Pima County Attorney
  By Jacob R. Lines                                            Tucson
                              Attorneys for Real Party in Interest

E S P I N O S A, Judge.

¶1       In this special action, we are asked to decide whether A.R.S. § 12-2203, which governs the admissibility of expert testimony, is constitutional. For the reasons stated below, we accept jurisdiction. But because the respondent judge correctly found the statute usurps the supreme court's rule-making authority and violates the separation of powers doctrine, we deny relief.

**FACTS AND PROCEDURAL BACKGROUND**

¶2       In the underlying criminal action, petitioner William Lear was charged with continuous sexual abuse of a child, in violation of A.R.S. § 13-1417. The victim, Lear's daughter, apparently delayed reporting the alleged acts and made conflicting statements to various individuals about sexual acts Lear purportedly had engaged in with her. Although at various points she retracted the allegations, she also reasserted them, insisting Lear had molested her.

¶3       Real party in interest State of Arizona disclosed its intent to call Wendy Dutton to testify as its expert regarding Child Sexual Abuse Accommodation Syndrome (CSAAS). Dutton has a master's degree in marriage and family counseling and routinely testifies as an expert about the character traits of child sexual abuse victims. The state anticipates she will testify in this case that: (1) child victims of sexual abuse often delay reporting intrafamilial abuse and the reasons for the delay; (2) child victims of intrafamilial sexual abuse may recant truthful allegations of abuse and the circumstances in which they recant; and (3) children who testify about sexual abuse commonly exhibit

2

the concept of "script memory," the way in which a child retrieves and processes memories of similar events. The state intends to present Dutton as a "blind expert," that is, it intends to elicit testimony from her about general characteristics of child sexual abuse victims, not this particular victim. Dutton has had no contact with and has not evaluated this victim individually, nor has she reviewed any statements or reports of any kind related to the allegations.

¶4　　　In July 2010, Lear filed a motion to preclude the state from calling Dutton to testify at trial as an expert. Lear asserted in his motion that, "[i]n an effort to adopt the expert witness limitations of *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and *Kumho Tire Co.,Ltd. v. Carmichael*, 526 U.S. 137 (1999), the legislature recently passed A.R.S. § 12-2203[,] which goes into effect on July 29, 2010." Relying to a large degree on the June 2010 interview of Dutton by Lear's counsel, Lear asserted "the proposed expert testimony of Ms. Dutton conflicts in several material respects with §12-2203," and the respondent judge should preclude her testimony. The state filed a response to the motion, arguing the statute did not apply to the kind of testimony Dutton was expected to provide and, even if applicable, the testimony was admissible under the statute as well as Rule 702, Ariz. R. Evid. Subsequently, it filed a motion asking the respondent to declare § 12-2203 unconstitutional, requesting that the court instead apply Rule 702 and the standard set forth in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), to determine whether Dutton should be permitted to testify. Lear filed his response and the respondent judge held a hearing on the motions.

¶5        The respondent subsequently issued a lengthy minute entry order in which

he agreed with the state that the statute "usurps the [Supreme] Court's rulemaking

authority and violates the separation of powers doctrine." Quoting our supreme court's

decision in *Logerquist v. McVey*, 196 Ariz. 470, ¶ 59, 1 P.3d 113, 133 (2000), the

respondent found the statute unconstitutional for the additional reason that it "necessarily

appoints the judge as the sole arbiter of credibility and therefore improperly 'encroach[es]

on the province and independence of the jury.'" The respondent applied Rule 702 and

*Logerquist*, rather than § 12-2203, and denied Lear's motion to preclude Dutton from

testifying. It noted, however, that were § 12-2203 constitutional, it would have precluded

Dutton's testimony for a number of reasons. The respondent then granted Lear's request

to stay further proceedings, permitting him to challenge the ruling in this special action.

## SPECIAL ACTION JURISDICTION

¶6        Both parties urge this court to accept jurisdiction of this special action. We

do so for the following reasons. First, the order from which Lear is seeking relief is

interlocutory in nature. *See Potter v. Vanderpool*, 225 Ariz. 495, ¶ 7, 240 P.3d 1257,

1260 (App. 2010). Second, and more importantly, we agree with the parties that this

special action involves "an issue . . . [that] is of first impression of a purely legal

question, is of statewide importance, and is likely to arise again." *Vo v. Superior Court*,

172 Ariz. 195, 198, 836 P.2d 408, 411 (App. 1992). This special action involves the

interpretation of a newly enacted statute that affects the admissibility of expert testimony

in all trials, a pure question of law. *See Nordstrom v. Cruikshank*, 213 Ariz. 434, ¶ 9, 142

P.3d 1247, 1251 (App. 2006) (given number of cases remanded for resentencing in light

of Supreme Court decision and likelihood issues would recur, interpretation and application of sentencing statutes constituted matter of statewide importance to litigants and judiciary and acceptance of special action jurisdiction appropriate); *see also O'Brien v. Escher*, 204 Ariz. 459, ¶ 3, 65 P.3d 107, 108 (App. 2003) (finding cases presenting purely legal issues of first impression and statewide importance and likely to recur particularly appropriate for special action review). However, because the respondent judge did not abuse his discretion in finding the statute unconstitutional, we deny Lear special action relief. *See* Ariz. R. P. Spec. Actions 3(c) (providing abuse of discretion among bases for granting special action relief); *see also Carondelet Health Network v. Miller*, 221 Ariz. 614, ¶¶ 2, 19, 212 P.3d 952, 954, 957 (App. 2009) (accepting special action jurisdiction because issue of statewide importance but denying relief because respondent judge did not abuse discretion).

## DISCUSSION

¶7 The Arizona Constitution identifies the three branches of government—the legislative, executive, and judicial—and provides that they "shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others." Ariz. Const. art. III. Among the powers ascribed to the supreme court is the "[p]ower to make rules relative to all procedural matters in any court." Ariz. Const. art. VI, § 5(5). "Rules of evidence 'have generally been regarded as procedural in nature.'" *Seisinger v. Siebel*, 220 Ariz. 85, ¶ 7, 203 P.3d 483, 486 (2009), *quoting State ex rel. Collins v. Seidel*, 142 Ariz. 587, 590, 691 P.2d 678, 681 (1984). Our supreme court clarified in *Seisinger*, however, that the authority to promulgate procedural rules does not

5

belong exclusively to the supreme court; rather, "it is more accurate to say that the legislature and [the supreme court] both have rulemaking power, but that in the event of irreconcilable conflict between a procedural statute and a rule, the rule prevails." *Id*. ¶ 8.

¶8        "Determining whether a statute unduly infringes on [the supreme court's] rulemaking power requires analysis of the particular rule and statute said to be in conflict." *Id.* ¶ 10. We must attempt to harmonize the two by construing the statute, "if possible . . . so that it does not violate the constitution." *Readenour v. Marion Power Shovel*, 149 Ariz. 442, 445, 719 P.2d 1058, 1061 (1986); *see also In re Pinal County Mental Health No. MH-201000076*, 596 Ariz. Adv. Rep. 24, ¶¶ 7-12 (Ct. App. Nov. 22, 2010) (finding statutes applicable to civil commitment proceedings constitutional because not in conflict with Rules 702 and 703, Ariz. R. Evid., and substantive in nature). As our supreme court stated in *Seisinger*, "statutory enactments that supplement rather than conflict with rules" promulgated by the court are not unconstitutional. 220 Ariz. 85, ¶ 8, 203 P.3d at 487. Before finding a statute unconstitutional, a court not only must find the statute conflicts with a rule but that the statute is procedural rather than substantive in nature. *Id*. ¶ 24.

¶9        Both before and since the legislature enacted § 12-2203, the admission of expert testimony has been governed by Rule 702, Ariz. R. Evid., and the standard set forth in *Frye* when the testimony related to novel scientific evidence. The rule, entitled "Testimony by Experts," provides as follows: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience,

training, or education, may testify thereto in the form of an opinion or otherwise." Under the *Frye* test, trial judges are charged with determining whether a scientific principle has "gained general acceptance" in the relevant scientific community such that an expert, whose testimony is based on that principle, may be regarded as sufficiently reliable to be permitted to testify. 293 F. at 1014. Arizona adopted the *Frye* test in 1962. *See State v. Valdez*, 91 Ariz. 274, 277-80, 371 P.2d 894, 896-98 (1962).

¶10        In *Daubert*, the United States Supreme Court interpreted language in Rule 702 of the Federal Rules of Evidence, which at that time was the same as the Arizona rule, and adopted an approach for determining the admissibility of scientific expert testimony that rejected the plain language of the rule and the *Frye* test as the sole criteria. The Court determined that a trial judge must serve as the "gatekeep[er]" for determining the admissibility of expert testimony by deciding first, "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." 509 U.S. at 592, 597. That determination, the Court continued, "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id*. at 592-93. The Court suggested four factors for judges to consider in conducting that inquiry: whether the theory or technique "can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," "the known or potential rate of error," and whether the theory or technique has been generally accepted by the relevant scientific community. *Id*. at 593-94.

7

**¶11**        In *General Electric Co. v. Joiner*, 522 U.S. 136 (1997), and *Kumho Tire*, 526 U.S. 137, the Supreme Court clarified the scope of its decision in *Daubert*. The Court held in *Joiner* that *Daubert* applies to any conclusions an expert has reached, not just the expert's "'principles and methodology.'" 522 U.S. at 146, *quoting Daubert*, 509 U.S. at 595. Thus, a trial judge may preclude expert testimony if the judge finds "there is simply too great an analytical gap between the data and the opinion proffered" because "conclusions and methodology are not entirely distinct from one another" and "[t]rained experts commonly extrapolate from existing data." *Id*. In *Kumho Tire*, the Court further broadened the scope of *Daubert*, concluding it applies not only when an expert has relied on the application of a scientific principle, but also to testimony based on the expert's own skill and observations. 526 U.S. at 146-47, 151.

**¶12**        In *Logerquist*, a majority of the Arizona Supreme Court rejected the *Daubert* trilogy's[1] interpretation of the federal counterparts to Rules 702 and 703 of the Arizona Rules of Evidence and the test adopted in *Daubert* for determining the admissibility of expert testimony. The court confirmed it would continue to apply *Frye* "when an expert witness reaches a conclusion by deduction from the application of novel scientific principles, formulae, or procedures developed by others," but found *Frye* "inapplicable when a witness reaches a conclusion by inductive reasoning based on his or her own experience, observation, or research." 196 Ariz. 470, ¶ 62, 1 P.3d at 133. The

---

[1]*See Lohmeier v. Hammer*, 214 Ariz. 57, ¶¶ 32-33 & n.7, 148 P.3d 101, 110 & 110 n.7 (App. 2006) (noting that *Daubert*, *Joiner* and *Kumho Tire* often referred to as "*Daubert* trilogy").

court made clear its vigorous opposition to the broad gate-keeping power the *Daubert* trilogy had ascribed to trial judges, stating "[q]uestions about the accuracy and reliability of a witness' factual basis, data, and methods go to the weight and credibility of the witness' testimony and are questions of fact. The right to jury trial does not turn on the judge's preliminary assessment of testimonial reliability." *Id*. ¶ 52.

¶13 The court also made clear in *Logerquist* that judges still must rule on the admissibility of evidence based on the various rules of evidence, "and when the testimony is based on a novel scientific principle that the witness has taken from others and applied to the case at hand, the judge may, as a matter of foundation, require a showing of general acceptance." *Id*. ¶ 53. "Thus," the court concluded, "we retain the *Frye* rule but continue to apply it as described in [*State v.*] *Hummert*[, 188 Ariz. 119, 933 P.2d 1187 (1997)]. We reject the *Joiner/Kumho* interpretation of Fed. R. Evid. 702 and continue to apply Ariz. R. Evid. 702 as written and interpreted by our cases." *Id*. ¶ 65.

¶14 The legislature enacted § 12-2203 in May 2010 and it became effective on July 29, 2010. *See* 2010 Ariz. Sess. Laws, ch. 302, § 1. Entitled, "Admissibility of expert opinion testimony," it states as follows:

> A. In a civil or criminal action, only a qualified witness may offer expert opinion testimony regarding scientific, technical or other specialized knowledge and the testimony is admissible if the court determines that all of the following apply:
>
> 1. The witness is qualified to offer an opinion as an expert on the subject matter based on knowledge, skill, experience, training or education.

9

2. The opinion will assist the trier of fact in understanding the evidence or determining a fact in issue.

3. The opinion is based on sufficient facts and data.

4. The opinion is the product of reliable principles and methods.

5. The witness reliably applies the principles and methods to the facts of the case.

B. The court shall consider the following factors, if applicable, in determining whether the expert testimony is admissible pursuant to subsection A:

1. Whether the expert opinion and its basis have been or can be tested.

2. Whether the expert opinion and its basis have been subjected to peer reviewed publications.

3. The known or potential rate of error of the expert opinion and its basis.

4. The degree to which the expert opinion and its basis are generally accepted in the scientific community.

Agreeing with the state, the respondent judge found the statute "usurps the [Supreme] Court's rulemaking authority and violates the separation of powers doctrine." The respondent reasoned the statute does not supplement the rule but, quoting *State v. Robinson*, 153 Ariz. 191, 197, 735 P.2d 801, 807 (1987), and *State ex rel. Collins v. Seidel*, 142 Ariz. 587, 591, 691 P.2d 678, 682 (1984), "tends to engulf" it, finding the statute "extends well beyond . . . Rule [702,] embracing something more akin to the *Daubert* standard," which the supreme court rejected in *Logerquist* and other decisions.

¶15 In determining whether the respondent judge abused his discretion, *see* Ariz. R. P. Spec. Actions 3(c), we consider whether he committed an error of law, *see Potter*, 225 Ariz. 495, ¶ 6, 240 P.3d at 1260. And, as we previously stated, the interpretation of a statute is a question of law we review de novo. *Danielson v. Evans*, 201 Ariz. 401, ¶ 13, 36 P.3d 749, 754 (App. 2001). Our goal in interpreting a statute is to discern and implement the intent of the legislature when it enacted the law. *State v. Zinsmeyer*, 222 Ariz. 612, ¶ 28, 218 P.3d 1069, 1080 (App. 2009). "We first look to the plain language of the statute as the best indicator of legislative intent." *Id.*

¶16 In his special action petition, Lear concedes that, based on the language of the statute and the legislative history, the legislature intended "to adopt the expert opinion standard of *Daubert*."[2] He argues that "because the *Daubert* standard was the result of the U.S. Supreme Court's construction of an identical Rule 702, there is no conflict between the statute and Rule 702." He acknowledges this court is bound by the supreme court's decision in *Logerquist,* but asserts "that opinion bears reexamination especially because it did not address the constitutional separation of powers issues raised in the case at bar." He urges us "to distinguish *Logerquist* and to join the call for its reconsideration," citing the decision by Division One of this court in *Lohmeier v. Hammer*, 217 Ariz. 57, ¶ 53, 148 P.3d 101, 115 (App. 2006).

---

[2]Although the statute's plain language makes that intent clear, we note that Lear has provided us with the Arizona Senate Fact Sheet, which expresses that intent unequivocally: the statute "[r]equires the courts to use the *Daubert* standard in civil and criminal actions to determine the admissibility of expert opinion testimony."

11

¶17    Even were we to agree with Lear that *Logerquist* should be reexamined, it is not for this court to do so; rather, we are compelled to follow supreme court precedent. *See State v. Miranda*, 198 Ariz. 426, ¶ 13, 10 P.3d 1213, 1216 (App. 2000), *aff'd*, 200 Ariz. 67, 22 P.3d 506 (2001).  And based on the court's decision in *Logerquist*, as well as its discussion of the separation of powers doctrine in *Seisinger*, we do not believe *Logerquist* is meaningfully "distinguishable," nor do we believe the statute can be harmonized with the rule.

¶18    As we must, we adopt our supreme court's interpretation of Rule 702 and, consequently, construe it "as written and interpreted by our cases." *Logerquist*, 196 Ariz. 470, ¶ 65, 1 P.3d at 134.  Comparing the rule and that interpretation of it to the plain language of § 12-2203, we can reach only one conclusion:  the statute does not "supplement" the rule.  *Seisinger*, 220 Ariz. 85, ¶ 8, 203 P.3d at 487.  Rather, the legislature essentially has rewritten the rule to codify *Daubert* and has adopted the federal test for determining the admissibility of expert testimony, a test our supreme court rejected.

¶19    Having adopted the *Daubert* trilogy, as Lear concedes, the legislature has promulgated an evidentiary rule that ascribes to trial judges the kind of broad "gatekeeping" role the court in *Logerquist* opposed when it rejected such an interpretation of its own rule.  In this respect, the statute essentially has repealed a rule of evidence.  *See Seidel*, 142 Ariz. at 591, 691 P.2d at 682 ("The legislature cannot repeal the Rules of Evidence . . . made pursuant to the power provided . . . in article [VI], § 5.").  The statute "provides an analytical framework contrary to the rules" of evidence.

12

*Barsema v. Susong*, 156 Ariz. 309, 314, 751 P.2d 969, 974 (1988). The rule and the statute "irreconcilabl[y]" conflict, *Seisinger*, 220 Ariz. 85, ¶ 8, 203 P.3d at 487, and, contrary to Lear's suggestion, they cannot be harmonized.

¶20 Simply because the rule and the statute conflict, however, we do not end our inquiry. As the respondent judge correctly noted, we also must determine whether the statute truly is procedural rather than substantive in nature. *Seisinger*, 220 Ariz. 85, ¶ 24, 203 P.3d at 489. We find helpful to our analysis the distinction between § 12-2203 and the statutes involved in *Seisinger* and *Pinal County Mental Health No. MH-201000076*. In *Seisinger*, the supreme court addressed the constitutionality of A.R.S. § 12-2604(A), which prescribes the requirements for introducing expert testimony on the standard of care in medical malpractice cases. 220 Ariz. 85, ¶¶ 15, 18-19, 42, 203 P.3d at 488, 494. The court found that, although the statute conflicted with Rule 702, *id.* ¶ 19, the statute nevertheless was "substantive in nature and d[id] not offend the separation of powers doctrine" because it changed the substantive law relating to medical malpractice actions, *id.* ¶ 42. Recognizing that the distinction between a substantive and procedural rule of law can be "'elusive,'" *id.* ¶ 29, *quoting In re Shane B.*, 198 Ariz. 85, ¶ 9, 7 P.3d 94, 97 (2000), the court stated, "The ultimate question is whether the statute enacts, at least in relevant part, law that effectively 'creates, defines, and regulates rights,'" *id.*, *quoting State v. Birmingham*, 96 Ariz. 109, 110, 392 P.2d 775, 776 (1964). The court examined the purpose of the statute within the context of medical malpractice actions and the common law and historical requirement for a particular kind of expert

13

testimony in such cases and concluded the statute effectuated a change in the "substantive common law, not merely a change in procedure." *Id*. ¶ 41.

¶21 Similarly, relying primarily on *Seisinger*, this court held in *Pinal County Mental Health No. MH-201000076* that A.R.S. §§ 36-533(B), 36-539(B), and 36-501(14), pertaining to civil commitment proceedings, are not unconstitutional for two reasons. First, they do not conflict with Rules 702 or 703 because they "do not govern the admissibility or relevance of expert testimony." 596 Ariz. Adv. Rep. 24, ¶ 10. Second, we found the statutes are "substantive in nature" because they "create, define and regulate rights and set the burden of proof for civil commitment." *Id*. ¶ 11.

¶22 Section 12-2203, however, is a general rule of evidence that, by its own terms, applies to the admission of expert testimony in "a[ny] civil or criminal action." § 12-2203(A). As the respondent judge noted, it does not alter any particular substantive law. It "engulfs" and supplants the existing rule with which it conflicts and therefore is unconstitutional because it violates the separation of powers doctrine. Thus, we conclude the respondent did not abuse his discretion in finding the statute unconstitutional on this ground and deciding to permit Dutton to testify based on Rule 702 and *Logerquist*, rather than § 12-2203. In light of this conclusion, we need not address the propriety of the respondent's determination that the statute also is unconstitutional because it "impermissibly encroaches on the province of the jury." *See* Ariz. Const. art. VI, § 27 ("Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law.").

14

¶23     For the reasons stated herein, we deny Lear's request for special action relief.

/s/ _Philip G. Espinosa_
PHILIP G. ESPINOSA, Judge

CONCURRING:

/s/ _J. William Brammer, Jr._
J. WILLIAM BRAMMER, JR., Presiding Judge

/s/ _Virginia C. Kelly_
VIRGINIA C. KELLY, Judge