NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MARGARET P., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, V.D., *Appellees*.

No. 1 CA-JV 22-0073
FILED 10-13-2022

Appeal from the Superior Court in Mohave County
No. B8015JD202004020
The Honorable Rick A. Williams, Judge

**AFFIRMED**

COUNSEL

Your AZ Lawyer, Phoenix
By Robert Ian Casey, Sarah J. Michael
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Autumn L. Spritzer
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Cynthia J. Bailey and Vice Chief Judge David B. Gass joined.

---

**T H U M M A**, Judge:

¶1          Mother appeals from an order terminating her parental rights to her daughter, V.D. Because Mother has shown no error, the order is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2          Mother has abused alcohol and other substances off and on for 30 years and has behavioral health issues. She has been hospitalized three times for alcohol-related psychiatric issues. V.D. was born in July 2018. In 2019, New York State removed V.D. from Mother's care and placed the child with maternal grandparents in Arizona. Mother then moved to Arizona, continued to abuse alcohol and repeatedly engaged in domestic violence with maternal grandfather, causing him physical injuries. Police charged her with multiple domestic-violence offenses, and she eventually pled guilty.

¶3          In Arizona, the Department of Child Safety (DCS) filed a dependency petition in May 2020 and placed V.D. with a foster family. That same month, the court found V.D. dependent after Mother pled no contest to the allegations and the court adopted a family reunification case plan.

¶4          After a short incarceration, Mother was released on probation and moved in with maternal grandparents. While on probation, Mother completed domestic-violence counseling and an inpatient alcohol-abuse program. These programs addressed various coping skills, including that Mother not associate with people who drink alcohol, practice independent living skills and enlist support networks to remain sober.

¶5          In the dependency, Mother agreed to participate in substance-abuse testing and treatment, behavioral-health services, parenting classes and visitation. Although she adequately participated in most services, she continued to abuse substances. In mid-2020, Mother consistently tested positive for a marijuana metabolite. She also submitted a diluted test that had traces of an alcohol metabolite. Because she was otherwise complying

with services, in December 2020, the court placed V.D. back in her care. Maternal grandparents agreed to supervise Mother and V.D.

¶6            In early 2021, Mother relapsed on alcohol, failed to consistently drug test and submitted diluted drug tests. A case manager's unannounced visit confirmed that the maternal grandparents left V.D. in Mother's sole care in violation of the safety plan. Mother's breath smelled of alcohol. The home was messy, and V.D. appeared neglected, so DCS took her back into custody. Mother later told DCS she relapsed at a celebratory dinner with a friend. Mother explained her relapse differently to her behavioral-health provider, stating she had been binge drinking for two weeks.

¶7            During mid-2021, Mother submitted several diluted urinalysis samples. She tested negative for alcohol but consistently tested positive for marijuana, leading DCS to be concerned she had "replaced her addiction to drinking with smoking marijuana." Mother then successfully completed a 30-day substance-abuse program. She also attended some relapse-prevention classes.

¶8            In August 2021, the superior court granted DCS' request to change the case plan to severance and adoption. DCS' motion, filed in September 2021, sought termination on chronic substance-abuse and 15-months' time-in-care grounds. *See* Ariz. Rev. Stat. (A.R.S.) §§ 8-533(B)(3), (B)(8)(c) (2022).[1] A month before the January 2022 termination adjudication, Mother relapsed on alcohol. She then re-enrolled in, and consistently attended, relapse prevention classes. Un March 2022, the court granted DCS' motion, terminating Mother's parental rights on the grounds alleged and finding termination was in the child's best interests. This court has jurisdiction over Mother's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-120.21(A) and 12-2101(A) and Ariz. R.P. Juv. Ct. 601-03.

## DISCUSSION

¶9            As applicable here, to terminate parental rights, a court must find by clear and convincing evidence that at least one statutory ground in A.R.S. § 8-533(B) has been proven and must find by a preponderance of the evidence that termination is in the best interests of the child. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*,

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

196 Ariz. 246, 249 ¶ 12 (2000). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights as long as it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009) (citation omitted).

**¶10**     On appeal, Mother's challenge is limited to the court's finding that severance was in V.D.'s best interest. Mother first argues the court made insufficient factual findings, an issue this court reviews de novo. *Francine C. v. Dep't of Child Safety*, 249 Ariz. 289, 296 ¶ 14 (App. 2020). "Every order of the court terminating the parent-child relationship . . . shall be in writing and shall recite the findings on which the order is based." A.R.S. § 8-538(A). The primary purpose of this requirement is to allow this court "to determine exactly which issues were decided" and whether the superior court "correctly applied the law." *Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 240 ¶ 24 (App. 2012). Findings are required to include those "ultimate" facts necessary to resolve the disputed issues. *Id.* at 241 ¶ 25.

**¶11**     Mother has not shown the findings are deficient. The court made several findings, both how termination would benefit V.D. and how the failure to terminate would cause a detriment. These findings include V.D.'s adoptability and the effect of Mother's substance abuse on the child. These findings contain the ultimate facts and allow for sufficient appellate review.

**¶12**     Mother also asserts the court merely duplicated its unfitness findings by focusing solely on her substance abuse in addressing best interests. A best interests assessment, however, properly includes "the negative effect on a child of the continued presence of a statutory severance ground." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151 ¶ 13 (2018) (citation omitted). Although the court made several findings about Mother's unfitness, it directly related those findings to V.D.'s best interests. The court also found that severance would allow V.D. "to benefit from consistent structure, support and safety" and "ensure that [V.D.]'s emotional and behavioral needs are met so that she can continue to develop and thrive," suggesting Mother's substance abuse prevents her from consistently meeting these needs for V.D. Mother has shown no error in the court connecting the substance abuse ground to the best interests determination.

¶13 Mother argues that the term "adoptable" and the best-interests inquiry lack a clear standard. She urges this court to develop a bright-line formula to determine best interests. The relevant inquiry, however, necessarily involves a fact-intensive analysis. Moreover, the Arizona Supreme Court has delineated how to determine best interests, *see Alma S.*, 245 Ariz. at 150-51 ¶¶ 12-15, and this court is compelled to follow that directive, *Lear v. Fields*, 226 Ariz. 226, 232 ¶ 17 (App. 2011).

¶14 Mother argues insufficient evidence supports the best interests findings. She challenges the court's finding that V.D. is adoptable based on the case manager's testimony that she has no special needs, is "young, [has] the biggest smile I've ever seen on a child, [and is] very kind." Mother asserts that the testimony "treats children in [foster] care as . . . chattel" and claims V.D.'s placement in a non-adoptive foster home would place the child in limbo until adopted.

¶15 The case manager's testimony shows that there are no barriers to a potential adoption and no special circumstances that might limit V.D.'s adoptability. *See Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352 (App. 1994) (DCS "need not show that it has a specific adoption plan before terminating a parent's rights" but "must show that the [child is] adoptable."); *see also Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98 ¶ 11 (App. 2016) ("[I]t is well established that [a child's] 'adoptable' status is a benefit that may, in consideration with other factors, support the 'best interests' finding."). The trial evidence supports the finding that V.D. is adoptable. Moreover, the court's other findings, identifying additional benefits and detriments and supported by trial evidence, independently support its best interests findings.

¶16 Finally, Mother asserts that the court abused its discretion by disregarding her bond with V.D. Although the court did not make a specific finding about their bond, it was not required to do so. *Logan B. v. Dep't of Child Safety*, 244 Ariz. 532, 537 ¶ 15 (App. 2018) ("[T]he juvenile court is not required to list each and every fact relied upon in making its findings.") (citation omitted). Moreover, after weighing the trial evidence, including uncontested evidence about Mother's bond with V.D. and her successful participation in visits, the court concluded the preponderance of the evidence supported a finding that termination was in V.D.'s best interests. *Dominique M.*, 240 Ariz. at 98 ¶ 12 (The "existence and effect of a bonded relationship between a biological parent and a child, although a factor to consider, is not dispositive in addressing best interests."). On this record, Mother has shown no error.

**CONCLUSION**

¶17        The termination order is affirmed.

